576 So.2d 461 (1991)
Henry DOUGHTY, et ux.
v.
INSURED LLOYDS INSURANCE CO., et al.
No. 90-C-1733.
Supreme Court of Louisiana.
March 11, 1991.
C. John Caskey, Baton Rouge, W. Hugh Sibley, Sibley & McShan, Greensburg, for Henry Doughty, et al. plaintiff-applicant.
John W. Anthony, Craig J. Robichaux, Talley, Anthony, Hughes & Knight, Bogalusa, for Insured LLoyds Ins. Co., et al. defendant-respondent.
MARCUS, Justice.
Henry C. and Vera Doughty are husband and wife, living under the community property regime in St. Helena Parish, Louisiana. For eighteen years, Henry Doughty *462 operated the H.C. Doughty Lumber Company in Tangipahoa Parish as a sole proprietorship. Although he visited the sawmill only once or twice a week and most of his activities involved purchasing timber in the field, he owned and operated the mill in his name and was responsible for the hiring of employees. Vera Doughty never visited the sawmill, which was located twenty-seven miles from the family home. She did not participate in its operations. She was a housewife, completely uninvolved in the business activities of her husband.
On January 14, 1987, twenty-three year old Michael Todd Doughty (Todd), the Doughtys' youngest son, was fatally injured while visiting the mill. Todd was standing to the side of a wood planer, which was being operated by an employee of the mill. Henry Doughty had purchased the planer for the sawmill three or four years before the accident. The planer ejected a sharp piece of wood which struck Todd in the chest near the heart. Todd removed the piece of wood and began to walk towards his brother, Clay, who was working at the mill. Clay testified that Todd was trying to tell him something but could not talk. Todd collapsed, and Clay placed him in a truck, which another brother drove to the hospital. During the drive Todd remained conscious while Clay administered mouth-to-mouth resuscitation. Shortly after they arrived at the hospital, Todd died.
Mr. and Mrs. Doughty brought survival and wrongful death actions against Insured Lloyds Insurance Co. (Lloyds), the commercial general liability insurer of the H.C. Doughty Lumber Company.[1] The named insured on the policy was H.C. Doughty, d/b/a H.C. Doughty Lumber Company. As the spouse of the named insured, Mrs. Doughty also was covered by the policy but "only with respect to the conduct of a business of which [her husband was] the sole owner."
The Doughtys claimed that the planer was defective and that it had caused their son's death, resulting in their damages. Lloyds denied coverage, contending that the Doughtys owned the planer which they asserted was defective, and therefore they could not recover damages attributable to their own fault.
The case was tried before a jury. Plaintiffs put on testimony to establish the defects in the planer, the fact that the defects caused Todd's death, and the damages suffered by Todd and by Henry and Vera Doughty. Plaintiffs' expert witnesses on mechanical engineering and industrial safety concluded that the planer had defective anti-kickback fingers and no side rollers, which were customary for machines of this nature in a lumber mill. Had the planer been equipped with the anti-kickback devices or had the side rollers been installed, the accident would not have happened. They concluded that the absence of these customary sideguards led to Todd's injury and death. After the death of their son, both Henry and Vera Doughty underwent counseling with the pastor of their church, who testified to the devastating effect Todd's death had on the family. A psychiatrist who evaluated both plaintiffs concluded that Henry Doughty was suffering from a "severe grief reaction" and described Vera Doughty's condition as an "unresolved grief reaction." Lloyds did not call any witnesses and did not contest the Doughtys' documentation of $5,824.44 in funeral and medical expenses.
In response to special interrogatories, the jury found that Henry Doughty had the sole custody of the planer, that the planer was defective, that no individual was negligent in causing Todd's death, and that the defective planer was the sole cause of Todd's death. The jury awarded the Doughtys $20,000.00 on their survival claim but did not award any damages on the wrongful death claims. The Doughtys *463 filed a motion for a judgment notwithstanding the verdict (JNOV) on the jury's failure to award any damages for the wrongful death claims. The trial judge granted the JNOV, awarding $125,000.00 in damages to each parent for their wrongful death claims. The judge also awarded each parent one half of the funeral and medical expenses ($2,912.22) and allocated to each one half of the survival damages ($10,000.00), for a total to each parent of $137,912.22 plus legal interest and costs. The judge also ordered Lloyds to pay Mr. and Mrs. Doughty $2,722.20 for "special" court costs. Lloyds appealed.
The court of appeal accepted the jury's findings that the defective planer caused Todd's death and that Mr. Doughty had custody of the planer. The court found that although Mrs. Doughty did not take part in the running of the sawmill, she was co-owner of the mill under the community property regime, and, as owner, she also had custody of the defective planer. Therefore, both Henry and Vera Doughty were legally at fault for the death of their son under article 2317 of the civil code and could not recover from Lloyds. In both the survival and wrongful death claims they were suing themselves as insureds under the policy and were barred from recovery under the doctrine of confusion. Accordingly, the court reversed both the survival and wrongful death awards.[2] On Mrs. Doughty's application to this court, we granted certiorari to review the correctness of that decision.[3] Mr. Doughty did not apply for a writ of certiorari; therefore, that portion of the judgment precluding his recovery is definitive.
The sole issue for our determination is whether under article 2317 of the civil code Mrs. Doughty had custody of the defective planer, which would make her strictly liable for her son's death and thus would preclude her recovery under the doctrine of confusion.
In order for Mrs. Doughty to recover from Lloyds under article 2317, she must prove three elements: 1) that the planer was defective, 2) that her damages were caused by the defect in the planer, and 3) that her husband (insured under the Lloyds policy)[4] had custody of the planer. See Ross v. La Coste de Monterville, 502 So.2d 1026, 1028 (La.1987). The only two experts who testified found that the planer was defective due to the defective anti-kickback fingers and the absence of side rollers, which allowed the piece of wood to be ejected from the side of the planer. They concluded that the defects in the planer caused Todd's death. Clearly, Mr. Doughty had garde of the planer, stemming from his ownership of the business as a sole proprietorship, his hiring of employees, his purchase of the planer, and his participation in the business. Thus, we find, as did the jury, that the planer was defective, that it caused Todd's death, and that Mr. Doughty had custody of the planer. As Mrs. Doughty has proven the elements necessary to recover under article 2317, the burden shifts to the defendant (Lloyds), which can escape liability by proving that the damages were caused by victim fault, third-party fault, or an irresistible force. Id. Lloyds failed to prove any of these defenses.
However, Mrs. Doughty is precluded from recovering if she is in fact suing herself.[5] As she was not negligent in *464 Todd's death, her only source of fault stems from article 2317 of the civil code which provides:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications. (emphasis added.)
This article imposes strict liability based on a person's relationship of custody (garde) to a defective thing which creates an unreasonable risk of injury to others. King v. Louviere, 543 So.2d 1327, 1329 (La.1989); Loescher v. Parr, 324 So.2d 441, 446 (La. 1975). As a general principle, the guardian is in a better position than the innocent victim to detect, evaluate and take steps to eliminate an unreasonable risk of harm arising in a defective thing. Ross, 502 So.2d at 1032; Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 n. 5 (La.1982). In King, we determined that "[t]he things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them." King, 543 So.2d at 1329.
Under most circumstances ownership alone establishes the requisite benefit, control and authority to find garde. Fonseca v. Marlin Marine Corp., 410 So.2d 674, 679 (La.1981); Loescher, 324 So.2d at 449 n. 7. Article 477 of the civil code defines ownership as "the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." Although ownership creates the presumption of garde, this presumption is rebuttable by the owner. To find otherwise would rewrite article 2317 to impose strict liability for the "ownership" of a defective thing rather than liability arising out of "custody" of the thing. In contrast, articles 2321 and 2322 of the civil code impose strict liability arising out of ownership. See Rozell v. Louisiana Animal Breeders Cooperative, Inc., 434 So.2d 404, 408 (La.1983).
Whether the law imposes a duty of garde upon Mrs. Doughty is a factual inquiry. King, 543 So.2d at 1330; Kent, 418 So.2d at 497. Thus, we must determine 1) what benefit Mrs. Doughty received from the planer and 2) what kind of direction and control she had over it.
In this case, presumably Mrs. Doughty derived some benefit from the planer in that it was part of her husband's business which provided income to the community in which she shared. However, it does not appear from the record that the planer was the main piece of equipment which sustained the profitability of the business. It had been purchased only three or four years before the accident and was used only about once a week. Thus, although she received a benefit from the ownership, the benefit was not substantial.
In a practical sense, Mrs. Doughty had no control or authority over the defective planer. The evidence indicated that she never visited the mill. Mrs. Doughty did not buy the machinery in question; she did not install it or operate it. Her sole relationship to the planer stems from the fact that the planer was purchased during the existence of the community and was community property. La.Civ.Code arts. 2338, 2340.
Although article 2346 of the civil code states the general principle that each spouse has the equal right to manage community property without the consent or concurrence of the other, article 2350 provides an exception. It states:
The spouse who is the sole manager of a community enterprise has the exclusive right to alienate, encumber, or lease its movables unless the movables are issued in the name of the other spouse or the concurrence of the other spouse is required by law.
Clearly, Henry Doughty was the sole manager of the community enterprise, the sawmill, and had the exclusive right to alienate, encumber, or lease its movables. Mrs. Doughty's ownership interest gave her no *465 authority or control over the operation of her husband's business or over its movables. Her ownership interest in the defective planer was remote. Unlike other owners, the owner of community property cannot judicially partition it during the existence of the community. La.Civ.Code art. 2336. Mrs. Doughty had only the contingent right to claim half ownership of the planer in the event that the community property regime was dissolved. Although she was an owner by virtue of the community property laws, she was not in a better position than an innocent victim to detect, evaluate or take steps to eliminate an unreasonable risk of harm arising in the defective planer. See Ross, 502 So.2d at 1032.
Under these facts, Mrs. Doughty has sustained the burden of proving that, despite her ownership interest, she did not have garde of the planer which killed her son. Under article 2317 she is not at fault for his death and is not precluded from recovering from Lloyds for her wrongful death and survival claims.[6]

QUANTUM
The trial judge awarded Mrs. Doughty $125,000.00 for her wrongful death claim. The Doughtys were a close family. Henry and Vera Doughty had five sons, and Todd was the third child they had lost. Todd, who was the youngest and lived at home, hunted and fished with his father. Todd raced motorcycles, and his parents followed him to races around the country. Because of the grief occasioned by Todd's death, the lumber mill was shut down. Two years after Todd's death, his mother had not opened his room. The testimony of her pastor, a psychiatrist, as well as other members of the family, confirmed the devastating effect that Todd's death had on his mother. Under the circumstances, we are unable to say that the trial judge abused his discretion in awarding Mrs. Doughty $125,000.00 for her wrongful death claim.
The jury awarded $20,000.00 for Todd's survival action to Mr. and Mrs. Doughty, and half was attributed to each parent. After Todd was impaled by the wooden projectile, he maintained consciousness until his arrival at the hospital. He attempted to communicate with his brother, Clay, but he could not. The award of $10,000.00 to Vera Doughty for Todd's survival action does not represent an abuse of discretion.
The trial judge properly awarded to each parent one half of the funeral and medical expenses ($2,912.22). However, since Lloyds was successful in its suit against Henry Doughty, it should be assessed only one half of the "special" court costs ($1,388.60) and one half of other costs.
Accordingly, we reverse that portion of the judgment of the court of appeal which rejected Mrs. Doughty's claims. We reinstate the judgment of the trial court insofar as it awarded Mrs. Doughty $137,912.22 ($125,000.00 for the wrongful death claim, $10,000.00 for the survival action, and $2,912.22 for medical and funeral expenses) plus legal interest from the date of judicial demand until paid. One half of "special" court costs ($1,388.60) and one half of other costs are assessed against Lloyds.

DECREE
For the reasons assigned, that portion of the judgment of the court of appeal rejecting Mrs. Doughty's claims is reversed, and the judgment of the trial court is reinstated insofar as it awarded Vera Doughty $137,912.22 plus legal interest from the date of judicial demand until paid. One half of "special" court costs ($1,388.60) and one half of other costs are assessed against Insured Lloyds Insurance Co.
DENNIS, J., dissents with reasons.
NOTES
[1] Also made defendants were Hartford Insurance Co., Bituminous Insurance Companies, Worldsurance, Inc., and Clay Doughty, who was also named as a third party defendant by Lloyds. Hartford Insurance Co. and Bituminous Insurance Companies were dismissed from the suit without prejudice. The trial judge dismissed Lloyds' third party petition against Clay Doughty. The record does not reveal the disposition of the suit against Worldsurance, Inc.
[2] 563 So.2d 1233 (La.App. 1st Cir.1990).
[3] 569 So.2d 971 (La.1990).
[4] Mrs. Doughty has a right of action against her husband's insurer under the Direct Action Statute, La.R.S. 22:655, although La.R.S. 9:291 creates a procedural bar to a suit against her husband.
[5] The principle of confusion is defined in article 1903 of the civil code: "When the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion." This concept has been applied in survival and wrongful death actions in which persons who are entitled to recover under articles 2315.1 and 2315.2 of the civil code are also the tortfeasors. Lewis v. Till, 395 So.2d 737, 738 (La. 1981); Dumas v. United States Fidelity & Guaranty Co., 241 La. 1096, 134 So.2d 45, 49 (1961). In this case, if Mrs. Doughty were found to be strictly liable for the death of her son due to the defects in the planer, she would be cast in the role of both tortfeasor and beneficiary, or in the terms of the code, she would be both obligor and obligee, and her claim would be extinguished by confusion.
[6] It may be possible to prove that one spouse does not have garde over a defective thing owned by the community and thus is not strictly liable for damages caused by that thing. However, under most circumstances, the obligation to an injured party incurred by the spouse who has garde is a community obligation, which can be satisfied from the assets of the community. La.Civ.Code arts. 2360, 2361.