607 So.2d 813 (1992)
Mr. & Mrs. Steven M. BERTINI
v.
Debra Kay Britton Wife of/and Edward William TURNCLIFF, John Pool, South Savings and Loan Association, Sheriff Patrick J. Canulette, and the XYZ Insurance Companies.
No. 91 CA 1369.
Court of Appeal of Louisiana, First Circuit.
October 16, 1992.
Writ Denied January 15, 1993.
*814 Mary M. Swaim, New Orleans, and Julia M. David, Mandeville, for plaintiffs-appellants No. 1.
Michele D. Ahlers, Metairie, for defendant-appellant No. 2 Riley.
Charles M. Ponder, III, New Orleans, for defendant-appellee South Sav.
Before CARTER, LANIER and LeBLANC, JJ.
LeBLANC, Judge.
The issue presented herein is whether, for purposes of La.C.C. art. 2317 liability, a seizing creditor is considered to have garde over a piece of immovable property by virtue of the fact that the property was constructively seized by the sheriff pursuant to a writ issued upon the creditor's request? Finding that the mere occurrence of a constructive seizure does not give a seizing creditor garde of the property for purposes of art. 2317, we affirm the judgment of the trial court dismissing plaintiffs' suit against defendant, South Savings & Loan Association (South Savings).

FACTS
On March 15, 1989, five-year-old Matthew Bertini was killed while playing at his home in Covington, Louisiana, when a large tree fell from an adjacent lot upon the driveway of the Bertini home. At the time of this tragedy, the adjacent property, Lot 40 of Country Club Estates (Lot 40), was under constructive seizure by the Sheriff of St. Tammany Parish. The seizure had been made pursuant to a writ of fieri facias issued on January 19, 1989, at the request of South Savings to satisfy an in rem judgment recognizing its mortgage on this property. On April 28, 1989, South Savings was named as a defendant in a wrongful death suit filed by Matthew's parents, Mr. and Mrs. Steven M. Bertini.[1] The claim against South Savings was based on its status as the seizing creditor of Lot 40.
The following are the pertinent events, listed chronologically, leading up to the issuance of the writ of fieri facias for the seizure of Lot 40.

October 14, 1981Debra Kay Britton Turncliff and Edward William Turncliff purchase Lot 40, an undeveloped residential lot, by act of cash sale.

February 2, 1983The Turncliffs execute a promissory note in the amount of $33,153.60 in favor of South Savings, as well as a mortgage on Lot 40 as security for payment on the promissory note.

January 28, 1985South Savings files suit against the Turncliffs on the promissory note, alleging a default in payments and seeking judgment against them in the amount of $17,881.40, as well as recognition of the mortgage on Lot 40.

February 20, 1985Preliminary default entered against the Turncliffs in the South Savings' suit.

*815 February 25, 1985The Turncliffs file a petition for bankruptcy (Chapter 11) in the U.S. Bankruptcy Court, Eastern District of Louisiana, which in accordance with U.S.C. 11:362(a) served as an automatic stay of the commencement or continuation of judicial proceedings against the debtors.

February 26, 1985Judgment is rendered in favor of South Savings and against the Turncliffs for $17,881.40, plus recognition of the mortgage on Lot 40.

April 22, 1985Pursuant to a motion by South Savings, the judgment of February 26, 1985, is vacated in view of the automatic stay of the Bankruptcy Court effective February 25, 1985.

May 15, 1985Lot 40 sold to John Poole at public tax sale for nonpayment of 1984 taxes.

May 31, 1985Sheriff issues tax deed to John Poole for the purchase of Lot 40.

February 24, 1987An order is issued converting the Turncliffs' bankruptcy from a Chapter 11 to a Chapter 7 proceeding.

December 17, 1987Upon motion of South Savings, an order is issued by the bankruptcy court lifting the automatic stay with respect to Lot 40 and allowing South Savings to proceed with foreclosure on the lot.

April 6, 1988Order is issued discharging the Turncliffs in bankruptcy.

December 7, 1988The preliminary default entered on February 20, 1985, is confirmed and "judgment in rem" is entered against the Turncliffs in the amount of $17,881.40; the judgment also recognized South Savings' mortgage on Lot 40.

January 19, 1989South Savings files a written request for issuance of a writ of fieri facias directing the sheriff to seize and sell Lot 40 in order to satisfy the December 7, 1988 judgment.

January 19, 1989A writ is issued to the sheriff directing the seizure and sale of Lot 40.

January 26, 1989The sheriff completes a return on the writ indicating the execution of the writ.

February 6, 1989A notice of seizure is filed by the sheriff in the office of the recorder of mortgages for St. Tammany Parish.

March 15, 1989Matthew Bertini is killed by tree falling from Lot 40.

ACTION OF TRIAL COURT
On July 31, 1989, South Savings filed a motion for summary judgment, which was denied by the trial court on September 15, 1989. South Savings filed a second motion for summary judgment on June 8, 1990. Following a hearing on January 15, 1991, the court rendered judgment granting South Savings' motion for summary judgment and dismissing it from plaintiffs' suit. Plaintiffs now appeal this judgment; an appeal was also taken from this judgment by third-party defendant, Earlton T. Riley.[2] South Savings filed an answer to plaintiffs' appeal, seeking damages and attorney's fees for frivolous appeal.

ISSUE
Does a seizing creditor who requested the issuance of a writ pursuant to which a sheriff constructively seized a piece of immovable property have garde over the seized property for purposes of imposing liability under La.C.C. art. 2317 merely by virtue of the fact that it requested the seizure and sale of the property?

DISCUSSION
One of the essential elements a plaintiff must prove in order to recover under La.C.C. art. 2317 is that the thing which caused the damage was in the custody or garde[3] of the defendant. Sistler v. *816 Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990). In most instances, the owner of a thing has custody (garde) of it. Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La.1991). However, under certain circumstances someone other than its owner may have custody (garde) of the thing. See, Loescher v. Parr, 324 So.2d 441, 449, (La.1975), ftnt 7.
In King v. Louviere, 543 So.2d 1327, 1328-29 (La.1989), the Supreme Court outlined the following guidelines for determining who has custody (garde) of a thing.
Under La.Civil Code article 2317 the person who has the garde of a thing is he who has the legal duty to prevent its vice or defect from harming another. The determination of the existence of this duty is made through a process of policy considerations similar to that used in determining other delictual duties. To assist the trier of fact in this deliberation this court has set forth several general principles: the liability arises from the guardian's legal relationship to the thing whose defect creates an unreasonable risk of injury to others. The garde is the obligation imposed by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others. The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. The guardian is in a better position than the innocent victim to detect, evaluate and take steps to eliminate an unreasonable risk of harm arising in the thing. (Citations omitted.)
In the present case, the sheriff did not make an actual seizure of Lot 40, but only a constructive seizure of the property in accordance with La.R.S. 13:3851 et seq. These provisions provide that the entry of the description of the immovable property in the sheriff's seizure book and the filing for recordation in the mortgage record of the notice of seizure shall be considered the actual seizure of the property without the necessity of an actual seizure. La.R.S. 13:3855. Thus, in the case of a constructive seizure, the sheriff does not take actual possession of the immovable property and, therefore, does not exercise physical control over the property in the same manner as with an actual seizure. See, Phillips v. Great So. Mortg. & Loan Corp., 350 So.2d 1279, 1282 (La.App. 3rd Cir.1977) and Escat v. National Bank of Commerce in New Orleans, 284 So.2d 832, 835 (La.App. 4th Cir.1973), overruled on different grounds in General Motors Acceptance Corp. v. Meyers, 385 So.2d 245 (La.1980).
Furthermore, it is undisputed that South Savings had no ownership interest in Lot 40, but only a security interest in this property in the form of a mortgage. La. C.C. art. 3278 defines a mortgage as "a nonpossessory right created over the property to secure the performance of an obligation."[4] A mortgage gives the mortgagee neither title nor the right of possession of the property. Howe v. Austin, 40 La. Ann. 323, 4 So. 315, 316 (La.1888); Miller v. Shotwell, 38 La.Ann. 890 (1886). See also, Smith v. Silvernail, 553 So.2d 1029, 1030 (La.App. 4th Cir.1989).
Thus, as a practical matter, South Savings had no physical control or authority over the property; it only had the right to have the sheriff seize and sell the property after obtaining a judgment recognizing its mortgage. Smith, supra. It is not alleged that employees of South Savings physically inspected or entered the property in question; nor that they had actual knowledge of the condition of the tree which fell on Matthew. Rather, plaintiffs rely entirely on the fact that South Savings was the seizing creditor of Lot 40 to establish that it had garde of Lot 40 for purposes of La.C.C. art. 2317.
In Smith, supra, the Fourth Circuit dealt with a similar issue in a case where the tenant of a building under constructive seizure was injured when the ceiling of the *817 building collapsed and fell on him. The Court concluded that the seizing creditor was not liable for the injuries sustained by the tenant during the pendency of the foreclosure proceedings. While it is true that South Savings would have benefitted from the sheriff's sale of Lot 40, we reach the same conclusion in the present case. South Savings' legal relationship to this property was not such as to give it the right of direction and control over the property in the sense intended by art. 2317 as a requirement for the imposition of liability. See, Doughty, supra. Considering the facts surrounding the constructive seizure of Lot 40, South Savings was not in a position where it should have detected and remedied any unreasonably dangerous condition of the tree.
For the reasons assigned, we find no genuine issues of material fact exist regarding custody (garde) of the seized property with respect to South Savings and that it was clearly entitled to judgment in its favor as a matter of law.[5] Therefore, the trial court correctly granted summary judgment dismissing plaintiffs' claim against South Savings.

ANSWER TO APPEAL
In an answer to plaintiffs' appeal, South Savings seeks an award of damages for frivolous appeal. However, even where contentions raised on appeal are without merit, if they nevertheless raise legitimate issues, damages for a frivolous appeal are not warranted. Rogers v. Parish of East Baton Rouge, 577 So.2d 1068, 1073 (La.App. 1st Cir.), writ denied, 580 So.2d 925 (1991). Although we have rejected the arguments made by plaintiffs, we believe they raised legitimate issues which were not made solely for the purpose of delay. Accordingly, South Savings' request for damages is denied.

DECREE
The judgment of the trial court is affirmed. Costs of this appeal are assessed against appellants, with one-half of the costs to be paid by Mr. and Mrs. Steven M. Bertini and one-half to be paid by Earlton T. Riley.
AFFIRMED.
NOTES
[1] Plaintiffs also named the following parties as defendants: Edward William Turncliff and his wife, Debra Kay Britton, John Poole (the purported tax sale purchaser of Lot 40), Sheriff Patrick J. Canulette, and XYZ Insurance Company. None of these defendants are parties to the present appeals.
[2] Mr. Riley was named as a defendant in a third-party petition filed by the Turncliffs. Although not clear from the record, Mr. Riley indicates in his brief that he was the owner of the lot upon which the tree fell.
[3] In applying La.C.C. art. 2317, the term "custody" has the same meaning as the French concept of "garde." Ross v. La Coste de Monterville, 502 So.2d 1026, 1029 (La.1987).
[4] This language was adopted by Acts 1991, No. 652, effective January 1, 1992. However, since it does not represent a change in the law relating to mortgages it is pertinent to the instant case. See, Revision Comments to this article.
[5] In the present case, appellants argue that because the trial court rendered judgment in favor of South Savings without determining which of the parties had actual custody (garde) of Lot 40, genuine issues of material fact remain with respect to such custody which made the granting of summary judgment improper. This argument lacks merit. Even though there are genuine issues of material fact, as well as serious legal issues, concerning which of the other parties did have custody (garde) of the property, resolution of these issues is not necessary to a determination of whether South Savings had custody (garde) of Lot 40. Accordingly, these issues are not now before this court, as they likewise were not before the trial court on South Savings' motion for summary judgment.