SANDRA CABRINA JENKINS, Judge.
_|¿This is a personal injury suit. Plaintiff, Daffney Davis, sustained scald burns from the bathwater at her leased condominium. Plaintiff filed suit against the owner and lessor of her condominium unit, Gulf Property Investments, L.L.C. (“GPI”), and other defendants, asserting claims of strict liability and negligence. GPI filed a motion for summary judgment seeking dismissal of plaintiffs claims against it. Plaintiff then filed a motion for partial summary judgment against GPI on the issue of liability. The trial court denied plaintiffs motion for partial summary judgment, granted summary judgment in favor of GPI, and dismissed plaintiffs claims against GPI with prejudice.
Plaintiff now appeals the trial court’s judgment granting GPI’s motion for summary judgment. After de novo review, we affirm.
*646 FACTS AND PROCEDURAL HISTORY
In July, 2007, plaintiff leased condominium unit # 381 at Riverside Court Condominiums (“Riverside”) from the unit owner, GPI. GPI owns only one individual unit at IgRiverside, which comprises 198 units. All condominium units at Riverside are managed by the condominium association, Riverside Court Condominium Association Phase II, Inc. (“RCCA”).
While living at unit #381, on January 21, 2011, plaintiff drew a bath for herself. As plaintiff stepped into the bathtub, the water scalded her; and before she could get out of the bathtub, plaintiff sustained severe burns. Plaintiff called 911 for help, and an ambulance arrived and took her to East Jefferson General Hospital. Due to the severity of her burns, plaintiff was transported to Joseph M. Still Burn Center in Augusta, Georgia. Plaintiff was treated for 40% body surface area burns, and she remained hospitalized for two to three months.
On July 11, 2011, plaintiff filed suit against GPI, RCCA, Catlin Specialty Insurance Company,[1] and Saia Plumbing Company[2] seeking damages for the injuries she sustained at Riverside unit # 381 on January 21, 2011. Within the petition, plaintiff asserted claims of negligence and strict liability against both GPI and RCCA. Plaintiff alleged that both defendants had complete custody and control of the leased premises and of the systems providing hot water to the leased premises. Plaintiff also alleged that both defendants owed and breached their respective duties to inspect the premises, make all necessary repairs, and discover any vices or defects in the premises. Plaintiff further alleged that GPI and RCCA were both strictly liable as the owner and custodian of the premises and the hot water system, pursuant to La. C.C. arts. 2317 and 2317.1. Finally, in plaintiffs |3second supplemental and amending petition, plaintiff alleged that GPI breached the warranties against vices and defects pursuant to La. C.C. arts. 2696, 2697, and 2698.
On October 23, 2012, GPI filed a motion for summary judgment seeking dismissal of all claims asserted against it by plaintiff. GPI argued that, the lease agreement with plaintiff relieved GPI of the lessor’s warranty against vices or defects in the premises; and plaintiff assumed responsibility for the condition of the premises, pursuant to La. R.S. 9:3221. GPI also argued there is no evidence to support plaintiffs claims of negligence or strict liability against it, because GPI had no custody, control, or responsibility for the hot water system or any alleged defect causing plaintiffs injuries. GPI owed no duty to plaintiff with respect to those things that were not within its custody or control; and furthermore GPI neither knew nor could have known of the alleged defect in the leased premises. Without custody or control of the thing or knowledge of the defect, GPI argued, there was no evidence to support plaintiffs negligence or strict liability claims.
On June 20, 2013, plaintiff filed an opposition to GPI’s motion for summary judgment, and, on July 22, 2013, plaintiff filed a motion for partial summary judgment against GPI on the issue of liability.
On September 20, 2013, the trial court held a hearing on the cross motions for summary judgment. In consideration of the parties’ arguments and all exhibits introduced into the record, the trial court *647 granted summary judgment in favor of GPI and denied plaintiffs motion for summary judgment. Plaintiff now appeals |4the trial court’s judgment, signed on October 15, 2013, granting GPI’s motion for summary judgment and dismissing all claims against GPI with prejudice.
STANDARD OF REVIEW
Appellate courts review summary judgment de novo, using the same criteria that govern the trial court’s determination on the motion for summary judgment, i.e., whether there is any genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Schultz v. Guoth, 10-0343, pp. 5-6 (La.1/19/11), 57 So.3d 1002, 1005-06 (citing Samaha v. Rau, 07-1726, p. 4 (La.2/26/08), 977 So.2d 880, 883.)
Summary judgment is properly rendered “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any... show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). The initial burden of producing evidence to support the motion for summary judgment is on the moving party, “who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case.” Schroth v. Estate of Samuel, 11-1385, p. 3 (La.App. 4 Cir. 4/18/12), 90 So.3d 1209, 1211 (quoting Schultz, 10-0343 p. 4, 57 So.3d at 1006). The moving party need not negate all essential elements of the adverse party’s claim; rather the moving party must point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim. Smith v. Treadaway, 13-0131, p. 4 (La.App. 4 Cir. 11/27/13), 129 So.3d 825, 828; La. C.C.P. art. [S966(C)(2). “At that point, the party who will bear the burden of proof at trial must present sufficient evidence to demonstrate that he or she will be able to carry that burden at trial.” Id. If the moving party has properly supported the motion for summary judgment, then “the failure of the non-moving party to produce evidence of material factual dispute mandates the granting of the motion.” Wright v. Louisiana Power & Light, 06-1181, p. 16 (La.3/9/07), 951 So.2d 1058, 1070 (quoting Babin v. Winn-Dixie Louisiana, Inc., 00-0078, p. 4 (La.6/30/00), 764 So.2d 37, 40).
DISCUSSION
In her first and second assignments of error, plaintiff contends there are genuine issues of material fact that preclude summary judgment regarding GPI’s liability for plaintiffs injuries. First, plaintiff asserts that GPI has ownership, custody and control of the premises; therefore, GPI is strictly hable for injuries caused by vices or defects in those premises. Plaintiff further asserts that GPI is strictly liable under the lessor’s warranties in the Civil Code which plaintiff did not waive pursuant to La. R.S. 9:3221. Finally, plaintiff argues that GPI is hable for negligence for its failure to prevent or warn of the unreasonably dangerous condition on the premises that caused plaintiffs injuries.
Strict Liability
Under Louisiana law, a party is responsible not only for damage resulting from one’s own act, but also for damage caused by things within one’s custody. La. C.C. art. 2317. Where damages are claimed as a result of vices or defects in Lthe thing within one’s custody, then this precept of strict liabihty is to be understood with the following modification:
[t]he owner or custodian, of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the *648 damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
La. C.C. art. 2317.1; see Graubarth v. French Market Corp., 07-0416, p. 4 (La. App. 4 Cir. 10/24/07), 970 So.2d 660, 663-64. Thus, to establish a party’s liability under La. C.C. arts. 2317 and 2317.1, the plaintiff must prove: (1) defendant owned or had care, custody, or control of the thing causing harm; (2) a vice or defect in the thing created an unreasonable risk of harm; and (3) the vice or defect in the thing was a cause-in-fact of plaintiffs injuries. Jones v. Peyton Place, Inc., 95-0574, p. 7 (La.App. 4 Cir. 5/22/96), 675 So.2d 754, 761; see Graubarth, 07-0416, p. 4, 970 So.2d at 664.
Under these codal articles, liability arises out of the party’s legal relationship to the thing posing an unreasonable risk of harm; and liability is imposed based on custody or garde, not solely ownership. Dupree v. City of New Orleans, 99-3651, p. 7 (La.8/31/00), 765 So.2d 1002, 1008. “[C]ustody or garde is a broader concept than ownership and custody or garde may be shared by multiple parties.” Graubarth, 07-0416, p. 4, 970 So.2d at 664. “[I]n determining whether a thing is in one’s custody or garde, courts should consider (1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing.” Dupree, 99-3651, [7p. 8, 765 So.2d at 1009 (citing Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La.1991); King v. Louviere, 543 So.2d 1327 (La.1989); Loescher v. Parr, 324 So.2d 441 (La.1975)). Determining custody or garde of the thing is a fact driven determination. Dupree, 99-3651, p. 7, 765 So.2d at 1009; Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461, 464 (La.1991). “Although there is a presumption that an owner has custody or garde of its property, this presumption is rebuttable. One way to rebut the presumption is by establishing a contractual undertaking by another to maintain and control the property.” Gallina v. Hero Lands Co., 03-0331, p. 5 (La.App. 4 Cir. 10/7/03), 859 So.2d 758, 762.
GPI counters plaintiffs claim of strict liability by arguing it had no custody or control over the defective thing — the hot water system — that posed an unreasonable risk of harm. GPI argues that its ownership of unit # 381 does not translate to custofty or control of all elements of the condominium property. GPI asserts that RCCA, the condominium association, has complete custody and control of common elements at Riverside, including a central hot water system for all units. Due to the fact that the hot water system is a common element, GPI asserts it has no custody or control of the defective thing and is not strictly liable.
In support of its position of non-liability, GPI relies upon the provisions of the condominium Declaration creating and establishing the Riverside condominium regime,[3] pursuant to the Louisiana Condominium Act, La. R.S. [s9:1121.101 et seq. Under the Louisiana Condominium Act, portions of the condominium property, known as units, are subject to individual ownership and the remainder of the property is owned in indivisión by all unit owners. See La. R.S. 9:1121.103. The portions of the condominium property that are not part of any individual unit are known as the common elements. Id. The *649 Riverside Declaration provides a non-exclusive list of the common elements at Riverside that include, “all compartments or installations of central services such as power, light, gas, cold and hot water;” and “all other elements of the Building or Parcel desirably or rationally of common use.... ” The Declaration further specifies that the maintenance, management, operation, repair, or replacement of the common elements “shall be the responsibility of and shall be furnished by the [RCCA].”
As a unit owner, GPI has a percentage ownership in the common elements. The percentage of ownership in the common elements held by each unit owner is determined by the square footage of the individual unit in relation to the total square footage of all Riverside units. Accordingly, GPI owns a 0.559 percent interest in the common elements. Despite holding a percentage of ownership in the common elements, the use of those common elements is regulated by the Riverside Declaration, the RCCA Bylaws, and the RCCA Articles of Incorporation, as permitted by provisions of the Louisiana Condominium Act.
As a designated power of any condominium association, La. R.S. 9:1123.102 provides, in pertinent part:
Subject to the provisions of the declaration, the association, even if unincorporated, may:
|3(1) Adopt and amend bylaws and rules and regulations.
(6) Regulate the use, maintenance, repair, replacement, and modification of common elements.
(14) Exercise any other powers conferred by the declaration or bylaws.
(16) Exercise any other powers necessary and proper for the governance and operation of the association.
Under a condominium regime, unit owners have as much use, control or access to the common elements as specifically conferred and regulated by the Declaration, Bylaws and Articles of Incorporation.
The Riverside Declaration particularly provides “Use and Occupancy Restrictions” and includes the following provision on the use of the common elements:
The Common Elements shall be used only by' the Unit Owners and their agents, ... for access, ingress to and egress from the respective Units and for other purposes incidental to use of the Units; provided, however, the garage, storage areas, and other areas designed for a specific use shall be used for the purposes approved by the Board. The use, maintenance and operations of the Common Elements shall not be obstructed, damaged, or unreasonably interfered with [by] any Unit Owner, and shall be subject to any lease, concession, or easement, ..., affecting any part of or all of said Common Elements. Without limiting the generality of the foregoing provisions of this Paragraph XX, use of the Property by the Unit Owners shall be subject to such rules and regulations as shall be promulgated by the Board.
GPI also introduced into the record the deposition testimony of two RCCA employees and a Board member: Nayanka Nero, the property manager hired by RCCA; Harry Coulon, the head of maintenance at Riverside, hired by the RCCA; and David Castell, a Riverside resident and RCCA board member. According to each person’s deposition testimony, none of the Riverside units have an 1 ^independent hot water heating system, i.e., hot water heater. The hot water for *650 all units is controlled and provided by one of two boilers, located within boiler rooms on either side of the Riverside property. Ms. Nero stated that only RCCA employees have keys to the boiler rooms and those rooms always remained locked. Mr. Coulon also stated that only RCCA employees have keys to the boiler rooms, that remain locked at all times; and he is responsible for conducting daily temperature checks of the boilers. Mr. Castell also confirmed that the boiler rooms remain locked and only RCCA employees have access to the boiler rooms.
“In determining direction or control over the premises and hence custody or garde,” this Court has looked to “whether a defendant possesses the ability to access the premises at will and whether a defendant has the ability to alter the premises.” Graubarth, 07-0416, pp. 5-6, 970 So.2d at 664; see Chaplain v. American Empire Surplus Lines Ins. Co., 98-1372 (La.App. 4 Cir. 3/31/99) 731 So.2d 973 (custody or garde is not shared or .transferred when there is limited ability to inspect the premises, limited access, and inability to alter premises); Mix v. Krewe of Petronius, 95-1793 (La.App. 4 Cir. 5/22/96), 675 So.2d 792 (no custody or garde where defendant lacked authority to make alterations).
Based on the evidence introduced in support of the motion for summary judgment, GPI has established it did not have direct access or control of the hot water system. The hot water for all units flows through one of two boilers serving all units at Riverside. The hot water system is part of the central services for all units to which the unit owners lack access, control, and operation. Accordingly, |nthe hot water system constitutes part of the common elements under the custody and garde of RCCA. Based on this showing, GPI has negated an essential element of plaintiffs claim of strict liability, i.e., GPI’s custody, garde or control of the defective thing— overheated water from the hot water system — posing an unreasonable risk of harm.
In opposition, plaintiff argues that she need not prove GPI’s custody over the defective thing because GPI’s liability arises directly out of its status as the owner and lessor of the unit. Plaintiff contends that regardless of the origin of the defect, GPI is strictly liable for a defect existing on the premises that presents an unreasonable risk of harm. Plaintiff bases this liability argument on the La. Civil Code articles governing the lessor’s warranties against vices and defects, i.e. La. C.C. arts. 2696, 2697, 2698, and 2699.[4] Plaintiff contends the lease does not contain a valid waiver of the lessor’s warranty against vices or defects pursuant to La. R.S. 9:3221; but even a valid waiver is ineffective insofar as it purports to waive liability for a defect that seriously affects health and safety.
Pursuant to La. R.S. 9:3221, a contract for lease may provide for a waiver of liability whereby the lessee assumes responsibility for the condition of the leased premises and relieves the owner of liability for injury caused by any defect therein |lgto the lessee; unless the owner knew or should have known of the defect to the *651 premises or had received notice thereof and failed to repair it within a reasonable time. See Lacinak v. Allstate Ins. Co., unpub. 06-1338, p. 3 (La.App. 4 Cir. 3/7/07), 2007 WL 7711283. A waiver of warranty is also ineffective “to the extent it purports to waive the warranty for vices or defects that seriously affect health and safety.” La. C.C. art. 2699.
Plaintiffs lease with GPI contains the following provision:
Lessee assumes responsibility for the condition of the premises. Lessor will not be responsible for damage caused by leaks in the roof, by bursting of pipes resulting from a freeze or otherwise, or any vices or defects of the leased property, or the consequences thereof, except in case of positive neglect or failure to take action toward remedy of such defects and the damage caused thereby. Should Lessee fail to promptly notify Lessor, in writing, of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties.
Plaintiff argues that this provision is ineffective under the circumstances of this case and does not extend to the particular defect at issue. Plaintiff asserts she could not assume responsibility for the condition of a thing not within her control, i.e., the temperature of the water delivered to her unit. She acknowledges the water was heated in a common area, outside of the premises of her unit; therefore, it was outside of her control and excluded from the above waiver. Second, plaintiff contends that the waiver of warranty is ineffective for the defect at issue — overheated water — because it seriously affects the health and safety of the lessee. Based on the lack of an effective waiver of warranty against vices and defects, plaintiff re-urges the argument that GPI is strictly liable, as a lessor, for the defect that caused her injuries.
11sThis Court has consistently held that a plaintiff must establish the owner or lessor had custody or control over the thing posing an unreasonable risk of harm in order to prevail on a claim of strict liability. See Flenner v. Sewerage and Water Bd. of New Orleans, 12-0829, pp. 3-4 (La.App. 4 Cir. 3/4/13), 110 So.3d 661, 664; Moody v. City of New Orleans, 99-0708, p. 48 (La. App. 4 Cir. 9/13/00), 769 So.2d 670, 672; Hebert v. St. Paul Fire and Marine Ins. Co., 99-0333, p. 4 (La.App. 4 Cir. 2/23/00), 757 So.2d 814, 816; Thumfart v. Lombard, 613 So.2d 286, 290 (La.App. 4th Cir.1993).
As previously discussed, GPI presented sufficient evidence to establish that it did not have access, responsibility, custody, or control of the hot water system flowing into plaintiffs unit. GPI presented factual support to establish that RCCA had contractually obligated itself to operate, maintain, repair and replace the common elements of Riverside; furthermore, RCCA had exclusive access and control over the thing — the hot water system — posing an unreasonable risk of harm. We further find that plaintiff has failed to produce any factual support sufficient to satisfy her evidentiary burden of proof at trial on the issue of GPI’s actual custody or control of the thing that posed an unreasonable risk of harm. Based on the evidence in the record on this motion for summary judgment, we find GPI is not strictly liable for plaintiffs injuries.
Negligence
In order to prevail on a claim of negligence, the plaintiff must prove that defendant knew or should have known of the defect at issue. See Jones v. Peyton Place, Inc., 95-0574, p. 7 (La.App. 4 Cir. 5/22/96), 675 So.2d 754, 761. If GPI knew or should have known of the vice or defect causing plaintiffs injuries, and GPI failed *652 to remedy it, then GPI would be liable in negligence. La. R.S. 9:3221; see Ford v. Bienvenu, 00-2876, p. 9 (La.App. 4 Cir. 8/29/01), 804 So.2d 64, 70.
It is well-established under Louisiana law,
[t]he owner of immovable property has a duty to keep the property in a reasonably safe condition and must discover any unreasonably dangerous condition or warn potential victims of its existence. The plaintiff must prove the owner knew or should have known of the risk. The property owner is not the insurer of the premises, but must act reasonably in view of the probability of injury.
Wiggins v. Ledet, 94-0485, p. 6 (La.App. 4 Cir. 9/29/94), 648 So.2d 797, 801 (citations omitted). “The mere existence of a hazard does not create liability for negligence; instead, it must be shown that the condition was present long enough for the defendant to discover and remedy the problem.” Jones, 95-0574, p. 2, 675 So.2d at 759 (citing DeGruy v. Orleans Parish School Bd., 573 So.2d 1188, 1192 (La.App. 4 Cir.1991)).
Plaintiff contends that GPI owed several duties relating to the hot water system: to inspect and maintain a reasonably safe hot water system for the unit; to discover any unreasonably dangerous condition; and to warn plaintiff of any potentially unsafe condition. Plaintiff, however, has not offered any evidence of how long the unreasonably dangerous condition was present; or evidence that defendant could have discovered the condition; or evidence that defendant had the opportunity to remedy the defective condition. See Jones, 95-0574, pp. 4-5, 675 So.2d at 760; Brisbon v. Rhodes Funeral Home, Inc., 00-1269, p. 11 (La.App. 4 Cir. 12/12/01), 814 So.2d 584, 549.
|1fiIn Wiggins, plaintiff alleged that defendant was liable in negligence for allowing a dangerous condition to exist on defendant’s property that resulted in the electrocution and death of plaintiffs son by a live wire from a major transformer on defendant’s property. The decedent had gone onto defendant’s property and gained entrance to an abandoned building and a vault wherein he was electrocuted by a wire from a transformer. Defendant, the owner of the property, introduced evidence of an agreement between the previous owner and NOPSI (New Orleans Public Service, Inc.) that the vault was owned by the property owner but the transformer and all equipment within the vault were owned, maintained, and operated by NOPSI; and NOPSI had exclusive use, control, and access to the vault. Defendant also introduced deposition testimony that NOPSI had exclusive possession, access to, and control of the contents of the vault. This witness testified that decedent had apparently gained entry through a vault door that was broken open; he also testified that the door was intact three or four weeks prior to the incident. Finding that the plaintiff had failed to offer any evidence to refute the evidence in support of defendant’s motion for summary judgment, this Court found the property owner owed no duty to maintain the vault in a safe condition; the uncontroverted testimony established that NOPSI had exclusive access to the vault and control of its contents that caused decedent’s electrocution. Wiggins, p. 94-0485, p. 8, 643 So.2d at 802. Consequently, this Court found the property owner/defendant not liable for negligence.
In this case, we find GPI has carried its burden of proof to negate plaintiffs claim of negligence. GPI introduced factual support that it had no custody, control, access or use of the boiler rooms supplying the hot water for all units at Riverside. GPI *653 also introduced excerpts of deposition testimony of plaintiff and 11fiher son to establish that plaintiff had not previously reported any problem or defect to GPI or RCCA relating to the hot water from her faucets. Plaintiffs son testified that he had noticed, on occasions prior to his mother’s incident, the hot water could be quite hot and steaming; but he was able to adjust both cold and hot water as needed. He stated that he had no knowledge, of a problem or any injury from the hot water temperature prior to his mother’s incident. Furthermore, on the night before the incident, he had taken a shower in the unit and did not experience any problems with the hot water temperature. GPI also offered uncontroverted deposition testimony and affidavits from the head of maintenance at Riverside and the property manager who stated that they had not received any other complaints, either previous to the incident or on the same date, about the hot water temperature. Based on this evidence, we find GPI has negated essential aspects of plaintiffs claim of negligence.
In opposition, plaintiff has failed to show that any genuine issue of material fact remains on the issue of negligence. Plaintiff offered further excerpts of plaintiffs deposition testimony describing the incident and her injuries. These excerpts, however, also contain plaintiffs testimony that she had not previously reported any problem with the hot water to GPI. Plaintiff introduced the log of daily temperatures from the boiler rooms, as recorded by an employee of RCCA. This evidence, however, does not establish GPI’s knowledge of the temperatures in the boiler rooms or the existence of a defect in the hot water system of which GPI had or should have had knowledge. Plaintiff has failed to provide factual support sufficient to support its claim of GPI’s negligence.
From the evidence in the record on this motion for summary judgment, we find no evidence that GPI knew or should have known of any problem or defect 117relating to the hot water temperature in plaintiffs unit. There is no genuine issue of material fact and we find GPI is not liable for negligence as a matter of law.
Liability Insurance
In her third assignment of error, plaintiff relies on the provision within the Louisiana Condominium Act requiring the condominium association to carry insurance coverage in which each unit owner is an insured person under the policy with respect to liability arising out of his ownership interest in the common elements or membership in the association. La. R.S. 9:1123.112(0(1). Plaintiff argues that that provision within the statute indicates the Louisiana Legislature contemplated that individual unit owners would be allocated responsibility for injuries arising out of the common elements of a condominium.
Relying on Blackwell v. Hanover Ins. Co., 551 So.2d 47 (La.App. 1 Cir.1989), plaintiff argues that the unit owner cannot escape liability due to the fact the condominium association has the responsibility to manage, maintain, and repair condominium property. In Blackwell, the plaintiff was injured when he slipped on a step leading down from a patio that adjoined an individually owned unit. The condominium association alleged it did not have use, custody or control of the defective condition — the step — because it was within a limited use area and constituted a limited common element; as such, the association did not have the responsibility to maintain it and could not be liable for the resulting injury. The First Circuit found, “[e]ven though the question of control over the limited common elements is ambiguous, it is still clear that, by definition, limited common elements are part of the common *654 elements, and any liability which arises as a result of the limited common elements should be an insured risk.” Id., 551 So.2d at 50. 11sUnder the facts of the case, the court held that both the unit owner and association had responsibility for the area and elements involved in plaintiffs injury.
We find this case distinguishable from Blackwell, in which the plaintiff was injured in a “limited use area” involving limited common elements that are in the custody and control of both individual unit owners and the association. In this case, the defective thing is a common element exclusively used and controlled by RCCA. Under the facts of this case, GPI has no access, use, control, or custody of the hot water system.
Plaintiff has not provided any further support for her interpretation that La. R.S. 9:1123.112 contemplates the liability of an individual unit owner under the circumstances of this case. Under the statute, the RCCA is obligated to carry insurance coverage for claims arising out of the common elements. The fact that the insurance coverage includes each individual unit owner as an additional insured does not create legal liability for each individual unit owner for any claim arising out of the common elements. Plaintiff must still prove the liability of the individual unit owner for a particular claim relating to the common elements or membership in the association. Here, plaintiff has failed to produce any factual support to establish that she can carry her burden of proof at trial with respect to GPI’s liability. Thus, we find no merit to plaintiffs argument.[5]
Incomplete Discovery
In her final assignment of error, plaintiff argues that the trial court erred in granting summary judgment because key discovery is incomplete. Plaintiff states |igthat she has been unable to secure the deposition testimony of Emile Mattox, a former employee of RCCA, “who may have interacted with the boiler in ways that have direct bearing on the relative liabilities in this case.”
A motion for summary judgment shall be granted only after adequate time for discovery. See La. C.C.P. art. 966(C)(1); Doe v. ABC Corp., 00-1905, p. 11 (La.App. 4 Cir. 6/27/01), 790 So.2d 136, 143. Louisiana jurisprudence holds that parties must be given a fair opportunity to carry out discovery but there is no requirement that summary judgment be delayed until discovery is complete. Thomas v. North 40 Land Development, Inc., 04-0610, p. 31 (La.App. 4 Cir. 1/6/05), 894 So.2d 1160, 1179. As the Louisiana Supreme Court stated, “[t]he only requirement is that the parties be given a fair opportunity to present their claim. Unless plaintiff shows a probable injustice a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact.” Simoneaux v. E.I. du Pont de Nemours and Co., 483 So.2d 908, 913 (La.1986).
Applying these precepts, we find no evidence showing that plaintiff has not been afforded a fair opportunity to carry out discovery and present her claim. Plaintiff filed suit in July, 2011; GPI filed its motion for summary judgment in October, *655 2012; the trial court hearing on the motion for summary judgment was held on September 20, 2018. The record also reflects that Mr. Mattox was scheduled to appear for deposition on February 22, 2013, but he did not appear. There is no further indication of plaintiffs efforts to secure the deposition testimony of Mr. Mattox. Furthermore, plaintiff has offered no argument that Mr. | ¡¡pMattox’s testimony would establish factual support for the claims of liability against GPI.
We find no basis to support plaintiffs contention that adequate discovery was incomplete. Thus, we find no merit in this assignment of error.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s judgment granting GPI’s motion for summary judgment and dismissing all claims asserted against GPI.
AFFIRMED

. RCCA's liability insurer.

. According to the petition, Saia Plumbing Company serviced or maintained the hot water system for Riverside units, including unit 381.

. The formal Declaration creating and establishing the Riverside condominium regime was filed for registry on February 28, 1984, in the Office of the Clerk for Jefferson Parish, pursuant to La. R.S. 9:1122.101.

. A lessor warrants a lessee that the leased thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose. La. C.C. art. 2696. This warranty extends to vices or defects that are not known to the lessor and to those arising after the delivery of the leased thing, but are not attributable to the fault of the lessee. La. C.C. arts. 2696, 2697. Furthermore, the lessee is obligated to notify the lessor of any vices or defects known to the lessee or else have any recovery for breach of warranty reduced for failure to notify. La. C.C. art. 2697. These lessor’s warranties may be waived by the lessee within the lease. See La. C.C. art. 2699.

. Although not designated as an assignment of error, plaintiff asserts that GPI's liability arises out of the Louisiana Plumbing Code, which sets forth specific safety provisions with respect to temperature control in showers and baths. See La. Admin. Code Title 51, XIV § 301. However, the Plumbing Code provisions referenced by plaintiff were not effective until January 1, 2013, twenty-eight years after Riverside was established and more than two years after plaintiff's incident. Thus, we find the Plumbing Code provisions are inapplicable to the facts of this case.