MADELEINE M. LANDRIEU, Judge.
LThe plaintiff, Kenneth Truxillo, appeals the trial court’s judgment granting summary judgment in favor of the defendant, Mardi Gras Productions, Inc. (“MGP”). For the reasons that follow, we reverse the trial court’s judgment.
FACTS AND PROCEEDINGS BELOW
Mr. Truxillo filed a petition for damages alleging that he was injured while walking in Champions Square during pre-game festivities held in connection with the New Orleans Saints-Cleveland Browns football game. Champions Square is an outdoor entertainment area adjacent to the Mercedes Benz Superdome. It is customary for vendors to set up food and beverage booths in the Square and for music and other activities to be provided to the public’s enjoyment in advance of football games and other sporting events.
In his petition, Mr. Truxillo alleges that at 11:30 a.m. on October 24th, he was walking toward a food line under a tent in the Square when “suddenly and without warning, what appeared to be a large stucco column that was not secured, yet placed in front of the tent, fell over and struck [him] on the head, causing injuries and damages ...” Mr. Truxillo named several defendants in his suit: The 12Louisiana Stadium and Exposition District (LSED) which owns the Superdome[1]; SMG, a company which operates the Superdome, the New Orleans Arena and the property on which they are located; Mardi Gras Productions (MGP), the company that owned the stucco-brick column that is alleged to have fallen on the plaintiff; and Centerplate, a food and beverage service provider with whom MGP contracted for services on the day in question. Mr. Truxillo claims in his lawsuit that MGP was the production company for the event at Champion Square on the day he was injured and that it owned and installed the stucco-brick column that fell on him causing his injuries. He claims *81 that this column created an unreasonably dangerous condition.
MGP filed a motion for summary judgment in which it argued that it was not liable for Mr. Truxillo’s injuries because it neither had custody, control, or garde over the area where the stucco-brick column allegedly hit Mr. Truxillo, nor over the stucco-brick column itself at the time the injuries occurred. MGP did not raise, in its motion for summary judgment, any issue relative to whether the plaintiff could prove that the column in question was defective or whether the column, as installed, created an unreasonable risk of harm. The sole basis for the its motion for summary judgment is MGP’s contention that it did not have custody, control or garde of either the column or the area and had no responsibility for the installation of the column.[2]
Mr. Truxillo opposed the motion on grounds that material issues of fact existed regarding whether MGP installed, erected or dismantled the columns; |swhether MGP failed to provide any instructions, guidelines or procedures for the installation, erecting, dismantling of the columns and whether MGP failed to properly ensure that the columns would be safely installed, erected or dismantled.
Following a contradictory hearing, the trial court granted the motion in favor of 'MGP. In its reasons for judgment, the trial court stated:
As it relates to Mardi Gras Production, the Court is satisfied that this party does not belong in this case. The evidence satisfies us. There are no issues of material fact in dispute. That they are, in fact, the party who delivered to Centerplate in this case. They had no continuing custody or garde over the items, the decorative items, and therefore, they should not be a party in this case. And we grant the Motion for Summary Judgment as to them alone.
This appeal followed.
DISCUSSION
In his sole assignment of error, Mr. Truxillo asserts that the trial court’s judgment granting summary judgment in favor of MGP was improper because there are genuine issues of fact as whether MGP had custody or garde of the stucco columns at the time of Mr. Truxillo’s injuries. We agree.
We review the trial court’s granting of a motion of summary judgment de novo using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. Fleming v. Hilton Hotels Corp., 99-1996, p. 2 (La.App. 4 Cir. 7/12/00), 774 So.2d 174, 176.
At the time of the hearing on the motion for summary judgment, Louisiana Code of Civil Procedure article 966 provided that summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for |4summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” The burden of proof is on the movant. La. C.C.P. art. 966(C). However, if the mov-ant does not bear the burden of proof at trial,
the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point *82 out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
La. C.C.P. art. 966(C)(2). In determining whether an issue is “genuine,” courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. Simon v. Fasig-Tipton Co. of New York, 524 So.2d 788, 791 (La.App. 3 Cir.), writs denied, 525 So.2d 1048, 1049 (La.1988).
Louisiana Civil Code article 2317 provides that “[W]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act ... of the things which we have in our custody.” This article is modified by Civil Code article 2317.1, which states:
[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and the he failed to exercise such reasonable care.
There is no dispute that MGP owned the decorative stucco columns. The issues before the trial court and now before us on de novo review are whether custody or garde of the columns was transferred by MGP to Centerplate, the Iscompany with whom it contracted to the delivery of the columns, and whether MGP had any responsibility for the installation or set up of the columns.
The Louisiana Supreme Court has held that “under most circumstances, ownership alone establishes the requisite benefit, control and authority to find garde.” Doughty v. Insured Lloyds Insurance Co., et al., 576 So.2d 461, 464, citing Fonseca v. Marlin Marine Corp., 410 So.2d 674, 679 (La.1981); Loescher v. Parr, 324 So.2d 441, 449 n. 7 (La.1975). However, this presumption can be rebutted by the owner. Doughty, 576 So.2d at 464. Accordingly, in this motion for summary judgment, the burden is on MGP to establish that garde of the stucco columns transferred from it to Centerplate and that it had no responsibility for the installation or set up of the columns.
The issue of garde is a factual determination. Id. In Dupree v. City of New Orleans and SW & B of New Orleans, 1999-3651, (La.8/31/00), 765 So.2d 1002, the Supreme Court stated that when determining whether a thing is under one’s custody or garde, the court should consider: (1) whether the person bears such a relationship as to have the right of direction and control over the thing; and (2) what, if any, kind of benefit the person derives from the thing?
In connection with MGP’s motion for summary judgment, the court admitted the affidavit of Steve Kneeht, an employee of MGP at the time of the accident. In his affidavit, Mr. Kneeht identified and attached the lease between MGP and Cen-terplate and stated that “during the lease period, Mardi Gras Production did not have custody or control over the brick columns and Mardi Gras [^Productions did not service, maintain, set-up or have any contact concerning the stucco brick columns leased to Centerplate after delivery by Mardi Gras Productions.”
In opposition to MGP’s motion for summary judgment, Mr. Truxillo asserted that there is a genuine issue of material fact as *83 to whether MGP provided and/or participated in the labor, including the installation and dismantling of the stucco columns. In support of his position, Mr. Truxillo introduced the sworn deposition of Mr. Knecht, and the affidavit and deposition of Randolph Philipson, the Director of Operations for SMG. It also referred to parts of the lease agreement between MGP and Centerplate and MGP invoices.
Mr. Truxillo asserts that Mr. Knecht’s affidavit is inconsistent with the invoices between Centerplate and MGP and that Mr. Knecht’s deposition testimony regarding the delivery of the stucco columns creates a genuine,issue of material fact.[3] In his deposition, Mr. Knecht, being shown the invoices, testified as followed:
Q: But you would agree that it says installation and dismantle, right?
A: Yes. It’s a pick up—
Q: No. There are separate things. There is one for transportation — let’s be very clear. Transportation to and from location, correct, that’s on that document, on the invoice?
A: Right.
Q: And underneath that it says labor, installation and dismantle, and I’m asking you again, does MGP, Inc. in the ordinary course of their |7practice of business bill people or stick things on invoices for work that they don’t do?
A: No, we do not.
Q: So is it fair to say that if you’ve got installation and dismantle on there, y’all probably had something to do with the installation and dismantling of the equipment utilized at Champion Square?
[[Image here]]
A: I don’t remember, I don’t. I mean if it says installation and dismantle, but it’s not saying what they actually did.
Q: Well, it’s not for just transportation and dropping off — hold on a second. You would agree with me that transportation and dropping off and leaving with something is different than installation and dismantling? As the director of operations, you would agree that those two things are different, wouldn’t you?
A: No. Transfer is putting something in the truck and bringing it to the location and sitting — installation is bringing it to the area — we don’t have a “delivered to” description on our invoices. So installation is bringing it to that area, we delivered it.
Q: What’s transportation — transportation seems to me. It says, transfer to and from location?
A: Yes. In a truck. From a location to a location, and then the installation is to take it off the truck.
[[Image here]]
Q: Well, in response to one of my questions are dismantling you also said “I don’t know.” So maybe you now that you’ve had time to reflect, are you absolutely positive that MGP had nothing to do at all with the installation and/or securing or dismantling of—
A: We just dropped them off.
Mr. Truxillo introduced into evidence at the hearing on the motion for summary judgment, the affidavit of Mr. Randy Phil-ipson. Mr. Philipson was the Director of Operations for SMG, the company that operated the Superdome and managed the property on which the Superdome is located, including Champions Square. In his affidavit, Mr. Philipson attested that he “[was] aware of, and [had] personal knowledge, that Mardi Gras Productions, Inc. built and maintained |sdecorative structures and food booths within Champion Square, which were installed, by that com *84 pany, during pre-game activities in the fall of 2010, including October 24, 2010.” (Emphasis added.) In his deposition, which was taken pursuant to Louisiana Civil Code article 1442, Mr. Philipson retracted this statement and testified that he learned from his counsel or from the affidavit of another person, after he signed his affidavit, that MGP actually did not install and dismantle the columns.
The standard for granting summary judgment is whether a genuine issue of material fact exists. In this case, MGP maintains that it did not install the stucco columns and only delivered them to Cen-terplate. Our de novo review of the record before us establishes this is a disputed material fact. Therefore, we find that the trial court erred in granting summary judgment in favor of MGP.
CONCLUSION
For the reasons stated, we reverse the trial court’s judgment granting summary judgment in favor of MGP.
REVERSED.

. LSED was dismissed, with prejudice, on May 27, 2012.

. La. C.C.P. Art. 966 F(l) provides that a summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time.

. This evidence was properly admitted at the hearing on the motion for summary judgement.