635 So.2d 573 (1994)
James David FAUL, Plaintiff-Appellant,
v.
BANK OF SUNSET & TRUST CO., et al., Defendants-Appellees.
No. 93-1080.
Court of Appeal of Louisiana, Third Circuit.
April 6, 1994.
Rehearing Denied May 19, 1994.
*574 J. Minos Simon, Miles A. Matt, Lafayette, for James David Faul.
Janice Marie Hornot, Baton Rouge, Carl M. Duhon, Lafayette, for Bank of Sunset & Trust Co., et al.
Before GUIDRY, C.J., LABORDE, J., and CULPEPPER, J. Pro Tem.[*]
*575 GUIDRY, Chief Judge.
This is a personal injury suit. Plaintiff, James Faul, a mechanic employed by Mount Enterprises, Inc. (d/b/a Discount Auto Rental), injured his back at work on November 21, 1988 when he slipped and fell in an oily substance on the garage floor. At the time, Faul was attempting to remove a front parking light from a rental car. Faul's employer, which was wholly owned by Ronnie Mount, did not have worker's compensation insurance coverage. Faul filed a worker's compensation claim and obtained a judgment against Mount. In response, Mount declared bankruptcy. The Bankruptcy Court discharged his obligation under the judgment. Plaintiff then filed this suit against the Bank of Sunset and Trust Company (the Bank), the owner of the premises where he was injured, and its insurer, Continental Insurance Company, seeking to recover for his back injury and related medical expenses.
In response to this suit, defendants moved for summary judgment. They urged that the Bank was neither negligent nor strictly liable and thus not responsible for Faul's injuries. After a hearing, the trial court sustained the motion for summary judgment and dismissed plaintiff's suit. The court determined that the Bank owed no duty to inspect the premises and was not responsible for the day-to-day condition of the building's floor surface. Accordingly, the court concluded that the Bank was not liable for Faul's injuries. Plaintiff's "motion to reconsider" was thereafter denied. Faul appealed.
On appeal, Faul contends that genuine issues of material fact exist concerning the Bank's duty to plaintiff to inspect the premises and whether the Bank was liable strictly or negligently for his injuries. He maintains that the trial court erred in making factual determinations which are properly decided after a full trial on the merits.
For the following reasons, we conclude that genuine issues of material fact exist as to whether the Bank had "garde" of the property and whether, under the particular facts of this case, it had a duty to inspect the premises and warn Faul of any defects. Accordingly, we reverse and remand this matter to the trial court for further proceedings.

FACTS
Faul and Mount worked together at an isolated repair facility located in a rural area north of Sunset, Louisiana. Faul was Mount's only employee. A 6,000 square foot metal building, of which 1,800 square feet was used for the repair and maintenance of Mount's rental cars, is located on the property. The remaining area was used by Mount, a vintage airplane enthusiast, and his personal friends to store, repair, and maintain their aircraft. A small airstrip is located next to the building. Mount and his fellow airplane enthusiasts used the building on weekends to service their airplanes.
The depositions of Faul, Mount, and the Bank through its representatives, Ray Bordelon and James Guilbeau, were entered into the record. Additionally, the deposition of Larry Leger, an automobile broker and Bank board member, was admitted.
Faul testified that the accident occurred at approximately 9:30 a.m. on Monday, November 21, 1988. At the time he was the only person on the premises and, therefore, the accident was unwitnessed. He stated that, before leaving work on the previous Friday, he cleaned his work area including the floor surface. The oil spot was not on the cement floor when he left on Friday. On Monday morning, his first task was to conduct a 5,000 mile inspection on one of Mount's rental cars. While attempting to remove a broken light bulb from the car's left front fender, Faul's right foot slipped out from under him, and he fell against the car. He felt a burning sensation in his back and, at the same time, saw oil on his shoe and on the floor. According to Faul, the oil spot was mixed with dust and looked as if it had been swept over. He suggested that probably the oil was spilled on the floor by someone working on an airplane over the weekend. He notified Mount that day of the accident and his pain but finished the day's work. Faul continued to work for about a month and then quit because the pain was not bearable. In early 1989, a myelogram and CT scan revealed a ruptured disc at L4-5. Soon thereafter, Faul underwent surgery to have the disc removed.
*576 On the date of the accident, the Bank owned the premises in question. The Bank had acquired ownership of the property some two months previously at a September 21, 1988 sheriff's sale after having foreclosed on the property because of Mount's failure to pay his indebtedness to the Bank. The facts reflect that Mount and his wife, Linda, borrowed $100,000 from the Bank on January 25, 1983 and mortgaged the aforementioned property as security for the loan. In 1986, Mount failed to make several monthly payments, and the Bank began foreclosure proceedings. On December 16, 1986, the trial court rendered a default judgment against the Mounts for the entire amount owed plus interest and attorney fees. The judgment also recognized and maintained the Bank's mortgage on the property. The sheriff seized the property by writ of fieri facias on July 13, 1988. The Bank acquired the property by sheriff's deed dated September 21, 1988.
The record contains no evidence regarding any contact between the Bank and Mount or any negotiations between them with regard to the property between the time of the sheriff's sale and the date of Faul's accident. The record does reflect that following the sheriff's sale, Mount continued in physical possession of the property; however, the record is silent as to the basis for such possession.
Leger testified that, at his recommendation, the Bank did not remove Mount from the property for security reasons. He stated that the Bank allowed Mount in possession in order to protect its interest in the property from possible vandalism. Also, the feeling was that Mount would maintain the property adequately. The Bank did not require Mount to either pay rent or execute a lease for his continued use of the property. Guilbeau, who at the time was the Bank's executive vice-president, generally corroborated Leger's testimony.
Approximately two weeks after the accident, on December 7, 1988, the Bank's board of directors adopted a resolution allowing Mount to remain on the premises for $300 per month "in order that someone will be on the premises for security reasons". These rental payments began in January, 1989. Guilbeau stated that he was unaware of any action taken by the Bank between the sheriff's sale and the commencement of Mount's rental payments to maintain, inspect, or care for the premises. He did not recall the Bank conducting an independent investigation of Faul's accident. Mount eventually defaulted in his rental payments and was evicted by the Bank.
Mount testified that he used the facility to repair and recondition used and rental cars in addition to his weekend aircraft activities. He characterized the business as a "very loose, unorganized two man operation". He stated that Faul was hardworking and kept his workspace and the rest of the shop clean. His company did not carry worker's compensation or liability insurance, and he did not personally pay for Faul's medical expenses. According to Mount, between the September 21, 1988 sheriff's sale and the Bank's December 1988 demand for rental payments, the Bank did not ask him to vacate the premises. Additionally, he stated that the Bank never inspected the premises for possible hazards.

OPINION
Pursuant to La.C.C.P. art. 966(B), summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law". In Durrosseau v. Century 21 Flavin Realty, Inc., 594 So.2d 1036, 1038 (La.App. 3rd Cir. 1992), this court reviewed the jurisprudential rules applicable to summary judgment cases as follows:
The party moving for summary judgment has the burden of showing the absence of a genuine issue as to any material fact. Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Burke v. Occidental Life Insurance Company of California, 427 So.2d 1165 (La.1983); *577 Mashburn v. Collin, 355 So.2d 879 (La. 1977). The court must first determine whether the supporting documents presented by mover are sufficient to resolve all material fact issues. If they are not sufficient, summary judgment must be denied. Only if they are sufficient does that burden shift to the opposing party to present evidence that material facts are still at issue, and only at this point may he no longer rest on the allegations and denials contained in his pleadings. Chargois v. Trip-L-Quik, 441 So.2d 45 (La.App. 3rd Cir.1983).
To satisfy his burden, the mover must meet a strict standard by a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. In evaluating the proof presented, the court must closely scrutinize the papers supporting the mover's position. The opposing papers are to be indulgently treated. Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981).
Only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Any doubt is resolved against the granting of summary judgment and in favor of a trial on the merits to resolve disputed facts. Thornhill v. Black, Sivalls, and Bryson, Inc., 394 So.2d 1189 (La.1981); Chaisson v. Domingue, 372 So.2d 1225 (La.1979).
A summary judgment is not to be used as a substitute for trial on the merits. The court should not grant a summary judgment if to do so requires a weighing of the evidence or the making of credibility evaluations.
A fact is material if its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. Material facts are those which potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of a legal dispute. Giddings v. Commercial Union Insurance Co., 539 So.2d 66 (La.App. 2d Cir.1988), writ denied, 541 So.2d 897 (La.1989), citing Cannon v. Insured Lloyds, 499 So.2d 978 (La.App. 3rd Cir.1986). In order for an appellate court to affirm a summary judgment rendered in favor of defendants in a personal injury case, the record as a whole must show that all critical elements of plaintiff's case have been set to rest, without regard to plaintiff's chances to ultimately prevail. Jarvis v. J.I. Case Co., 551 So.2d 61 (La.App. 1st Cir.1989), writs denied, 556 So.2d 56, 62 and 63 (La.1990).
Plaintiff seeks to recover for the Bank's negligence under La.C.C. art. 2315 or its strict liability under La.C.C. art. 2317. In order to recover in strict liability, Faul must prove that he was injured by a defect in the premises; that the premises were in defendant's custody; that the defect in the premises created an unreasonable risk of harm; and, that his injuries were caused by that defect. Upon proof of these elements, the custodian can escape liability only by proving victim fault, third party fault, or causation by an irresistible force, even if it is gratuitously loaned to another. Ross v. La Coste de Monterville, 502 So.2d 1026, 1027 (La.1987). In strict liability cases, the defendant's knowledge of the defect is presumed. On the other hand, in negligence cases under Article 2315, the plaintiff has the additional burden of proving that the defendant either knew or should reasonably have known of the defective condition and failed to take proper measures to correct the defect or warn others of its existence.
The record clearly establishes that the Bank had no actual knowledge of the oil spot on the floor at the repair facility and we determine that, under the circumstances, it cannot be concluded that the Bank should have known of the oil spot on its premises. Thus, the Bank is not liable pursuant to La.C.C. art. 2315 because the undisputed facts negate a critical element of Faul's case, the Bank's knowledge. In this respect, the court's judgment was proper.
However, we reach a different conclusion with respect to strict liability concluding that material issues of fact are in dispute such that summary judgment is not warranted.
*578 Under La.C.C. art. 2317, liability arises from the guardian's legal relationship to the thing, a defect in which creates an unreasonable risk of injury to others. This legal relationship, based on custody or "garde", is the obligation imposed by law on the thing's owner, or one who avails himself of it, to prevent it from causing damages to others. The things to which one has "garde" are those to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. King v. Louviere, 543 So.2d 1327, 1329 (La.1989), citing Loescher v. Parr, 324 So.2d 441, 449 (La.1976). Generally, ownership alone is sufficient to establish the requisite control or "garde". However, this presumption of "garde" by ownership is rebuttable. Doughty v. Insured Lloyds Insurance Co., 576 So.2d 461 (La.1991). A person with custody or "garde" of a defective thing is not absolved of strict liability by ignorance of the thing's condition or by circumstances showing the defect was not easily detected by the custodian. The owner who transfers possession of his structurally defective thing to another continues to have "garde" of the structure and the requisite duty to protect others from harm caused by the defect. Ross, supra.
Faul alleges that the Bank had the requisite "garde" over the facility containing the defect that caused his injury. The Bank, on the other hand, maintains that, by allowing Mount to remain and conduct business at the facility after the Bank acquired ownership thereof, "garde" was transferred to Mount. Clearly, Mount had "garde" over the facility prior to the sheriff's sale. Whether the Bank acquired exclusive "garde" of the premises through the sheriff's deed or Mount retained "garde" of the premises through his continued physical presence and business operations, or both the Bank and Mount had concurrent "garde" of the premises is a factual question in dispute. This disputed fact is material because the existence of "garde" in the Bank is essential to Faul's recovery. The determination of this fact, i.e., the exact relationship of the Bank and Mount vis-a-vis the premises, bears materially on the outcome of this legal dispute. Accordingly, summary judgment was improperly granted.
In Bertini v. Turncliff, 607 So.2d 813 (La. App. 1st Cir.1992), writ denied, 610 So.2d 817 (La.1993), the First Circuit affirmed a summary judgment granted in favor of a seizing creditor of property from which a tree fell and killed a child on an adjacent lot. At the time of the accident, the sheriff had constructively seized the property, but a sheriff's sale had not yet occurred. The court held that the creditor did not have the requisite "garde" of the property for purposes of La. C.C. art. 2317 because it had no ownership interest in or physical control over the property. The creditor only had a security interest in the property. See also Smith v. Silvernail, 553 So.2d 1029 (La.App. 4th Cir. 1989), wherein the court likewise affirmed a summary judgment, under similar circumstances, in favor of a seizing creditor which had instituted executory proceedings but had not yet taken title to the property upon which the plaintiff's injury occurred. The case sub judice is materially and factually distinct from these two cases in that, at the time of Faul's injury, the seizing creditor had taken title to the property through sheriff's deed. Whether the Bank had the requisite "garde", however, under the particular circumstances of this case, is a material issue of fact which should not be resolved on summary judgment.
We observe that one with "garde" does not have to remediate or warn of all risks, just those which are "unreasonable". The mere fact that a thing creates a hazard does not necessarily mean it is defective within the meaning and intendment of strict liability. "The key word is `unreasonable' and the plaintiff must show the risk created was unreasonable under all the circumstances". Tracy v. Jefferson Parish, 523 So.2d 266 (La.App. 5th Cir.1988), writ denied, 530 So.2d 569 (La.1988). The determination of whether a risk presents an unreasonable risk of harm is factual in nature and must be determined by weighing the probability of injury against the burden of preventing the injury. Entrevia v. Hood, 427 So.2d 1146 (La.1983).
Thus, whether a person has the aforementioned duty is dependent upon, generally, *579 whether he has "garde", and, specifically, whether the defect is of such a degree that it presents an unreasonable risk of harm. In the present case, a mechanic accustomed to working in repair facilities slipped in an oil spot and injured his back. He claims the oil spot was a defect presenting an unreasonable risk of harm to him. The Bank disputes his position, arguing that, as a mechanic, he should be accustomed to and aware of such possible dangers. Accordingly, the issues of unreasonableness of the risk and the Bank's duty are also in dispute. For these additional reasons, summary judgment was improperly granted.
For the above and foregoing reasons, we reverse the trial court's judgment and remand this suit to the trial court for trial on the merits. Costs of this appeal are to be paid by defendants-appellees, the Bank of Sunset and Trust Company and Continental Insurance Company.
REVERSED AND REMANDED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court.