886 So.2d 623 (2004)
Ethel BRADSHAW, Plaintiff-Appellant
v.
BROOKSHIRE GROCERY COMPANY d/b/a Super One Store 603 and Roy Shaw, Defendant-Appellee.
No. 38,960-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 2004.
*624 Paul J. Tellarico, Alexandria, for Appellant.
Jay P. Adams, Monroe, for Appellee.
Before WILLIAMS, GASKINS and CARAWAY, JJ.
WILLIAMS, J.
The plaintiff, Ethel Bradshaw, appeals a judgment dismissing her personal injury claim against Brookshire Grocery Company d/b/a Super One Store 603 ("Super One") and Roy Shaw.[1] For the following reasons, we affirm the trial court's judgment.

FACTS
On July 1, 2001, Roy Shaw, a Super One assistant store manager, cut a paper sign from the ceiling that fell on Ms. Bradshaw, a customer in the Super One grocery store. The sign had been hanging from the ceiling and was approximately two feet wide and two and one-half feet long. It was secured by a string and was approximately eight to ten feet above the ground.
At trial, Ms. Bradshaw testified that she had finished shopping and was walking to the front of the store to leave, when the sign fell "out of the air." She stated that the sign fell across the left side of her head and hit the side of her straw hat, turning the hat to one side. She alleged that the impact from the sign knocked a hole in her *625 hat "about the size of a fingernail." She also testified that she felt "like a piece of trash had just kind of blown across" her left eye, and she specifically stated that there was "not a blow" to her left eye. Ms. Bradshaw initially testified that the falling sign cut her face; however, she later denied that her face was cut.
Ms. Bradshaw alleged that after the incident, Shaw checked on her, and she immediately informed Shaw that she was dizzy. According to Ms. Bradshaw, Shaw escorted her to his office, gave her a glass of water and filled out some paperwork on the accident. She testified that she left the store a short time later and went home. She testified that when she arrived home, she took some Tylenol and slept most of the day.
On July 2, 2001, Ms. Bradshaw sought medical attention from Dr. Allen Spires, her family physician. She testified that she informed Dr. Spires of the accident and complained of blurredness, dizziness, headaches, facial numbness, a knot on her head (approximately "the size of a fifty cent piece") and pain in the back of her left eye. She testified that Dr. Spires examined her left eye because it was "solid red." However, on cross examination, Ms. Bradshaw testified that she had neither back nor neck pain, a swollen eye nor any headaches after the accident. Ms. Bradshaw testified that Dr. Spires gave her nasal spray and eye drops for her left eye. She also testified that Dr. Spires attempted to contact an eye doctor for her. According to Ms. Bradshaw, she saw Dr. Spires more than once for her injuries from the accident.
Ms. Bradshaw testified that she sought medical attention from Dr. Gerald Broussard, an ophthalmologist, the following month. She testified that Dr. Broussard dilated her eye and gave her some eye drops and Valium. Initially, Ms. Bradshaw said that the Valium was for sharp pain, but she later stated that the Valium was for inflammation. Ms. Bradshaw testified that before the accident, she had never had any problems with her eyes. She testified that after the accident, she could "hardly see" out of her left eye and her eye felt as if it had a "scab" over it. She denied having cataracts and denied being informed by Dr. Broussard that the "scab" over her left eye was associated with a cataract. According to Ms. Bradshaw, she had to wear eyeglasses as a result of the accident and Dr. Broussard told her to get reading glasses. However, on cross examination she admitted she first discovered that she had a reading problem in December 2001, approximately five months after the accident. Ms. Bradshaw admitted she had experienced a stroke prior to the accident that had affected her left side. She also admitted that in June 2001, her employer placed her on Social Security disability because he was concerned that she would have another stroke.
In contrast to Ms. Bradshaw's testimony, Shaw testified that at the time of the incident, the sign waved or floated down and hit Ms. Bradshaw's head. He testified that the sign tilted Ms. Bradshaw's hat to the side and the string attached to the sign "just fluttered down." Shaw testified that immediately after the accident, Ms. Bradshaw told him that she was fine, after he asked twice if she was okay. He also testified that Ms. Bradshaw did not appear to be hurt or injured. According to Shaw, approximately fifteen minutes later, Ms. Bradshaw's son approached him and stated that his mother needed him. Shaw stated that he then went to Ms. Bradshaw, escorted her to his office, gave her some water and filled out an accident report. Shaw testified that while they were in the office, Ms. Bradshaw informed him that *626 she felt dizzy and was experiencing a tingling in her left ear. Shaw testified that Ms. Bradshaw did not inform him of any eye problems or mention a knot on her head. He also stated that after Ms. Bradshaw left the store on the day of the accident, she never called or returned to inform him of any additional injuries.
In contrast to Ms. Bradshaw's testimony, Dr. Spires testified that he examined Ms. Bradshaw and her examination was normal. He testified that he ordered a CT scan because of her complaint of head discomfort, but there were no objective findings of an injury.[2] Dr. Spires' records did not indicate that Ms. Bradshaw was experiencing any eye pain or soreness. Dr. Spires testified that he did not know that Ms. Bradshaw had later seen an ophthalmologist. On July 31, 2001, Dr. Spires saw Ms. Bradshaw because of a foot problem, and he did not detect any head or eye problems. In January 2002 (approximately six months after the accident), Ms. Bradshaw reported to Dr. Spires that she was getting dizzy. Dr. Spires opined that the dizziness was associated with her blood pressure elevation and other chronic medical problems.
Dr. Broussard testified that he first examined Ms. Bradshaw on October 10, 2001. Ms. Bradshaw informed him of the accident (stating that it occurred in August) and of an emergency room visit. She complained of eye pain for the past couple of months and stated that she was taking Advil. During the first visit, Dr. Broussard concluded that Ms. Bradshaw had normal vision; however, she had an inflammatory disease in her left eye known as episcleritis. Dr. Broussard felt that although the disease was normally caused by the immune system, he could not conclusively rule out that the disease was caused by trauma. However, he stated that if the disease was caused by the accident, there should have been a blow to the eye. He also opined that there would be a severely red eye at the time of the accident or within a week of the accident.
Dr. Broussard noted that Ms. Bradshaw's episcleritis had cleared up after a few weeks of treatment with Pred Forte, a steroid drop and a nonsteroid pill. He opined that she had 20/20 vision in her left eye. On August 30, 2002, Ms. Bradshaw returned to Dr. Broussard complaining of sharp pains in her left eye, which Dr. Broussard diagnosed as neuralgia and treated with Valium. Dr. Broussard testified that her vision was basically 20/20. He did not know if the pains were connected to the accident; however, he opined that if they were connected, there probably should have been evidence of the pains at the time of the accident. Also, Dr. Broussard noted that Ms. Bradshaw had cataracts and glaucoma, which were unrelated to the accident. He further stated that her complaint at the time of trial, of a film over her left eye, would be consistent with cataracts; however, Ms. Bradshaw never complained to him about a film over her left eye.
At the conclusion of the trial, the trial court found that Ms. Bradshaw's alleged injuries did not result from the incident at Super One, but were a result of her pre-accident stroke which affected the left side of her body. The court dismissed Ms. Bradshaw's suit with prejudice. Ms. Bradshaw appeals.

DISCUSSION
Ms. Bradshaw contends the trial court erred in finding that she did not carry her burden of proving that her injuries *627 resulted from the accident. She argues that her injuries were caused by the falling sign and did not result from her pre-accident stroke.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and any alleged injuries. American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Collins v. Shelter Mutual Insurance Company, 36,528 (La.App.2d Cir.12/11/02), 833 So.2d 1166, writ denied, XXXX-XXXX (La.3/21/03), 840 So.2d 539; Williams v. State Farm Mutual Automobile Insurance Company, 36,439 (La.App.2d Cir.10/23/02), 830 So.2d 379. The plaintiff must prove causation by a preponderance of the evidence. Collins v. Shelter Mutual Insurance Company, supra. The plaintiff satisfies this burden by proving through medical and lay testimony that it was more probable than not that the injury was caused by the accident. Collins v. Shelter Mutual Insurance Company, supra; Williams v. State Farm Mutual Automobile Insurance Company, supra.
Whether the accident caused the plaintiff's injuries is a factual question which should not be reversed on appeal absent manifest error. Pinsonneault v. Merchants & Farmers Bank & Trust Company, 2001-2217 (La.4/3/02), 816 So.2d 270; James v. Robinson, 38,774 (La.App.2d Cir.8/18/04), 880 So.2d 975; Hughes v. Scottsdale Insurance Company, 35,043 (La.App.2d Cir.8/22/01), 793 So.2d 537. Reversal is warranted only if the appellate court finds that a reasonable factual basis for the trial court's finding does not exist in the record and that the finding is clearly wrong on the record. Pinsonneault v. Merchants & Farmers Bank & Trust Company, supra; James v. Robinson, supra; Perow v. Lenzly, 30,833 (La.App.2d Cir.8/19/98), 716 So.2d 519. The reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. Pinsonneault v. Merchants & Farmers Bank & Trust Company, supra.
After a thorough review of this record, we conclude that the trial court was not clearly wrong in finding that the plaintiff's alleged injuries to her head and left eye were not caused by the accident. The trial court adopted Shaw's testimony of the accident, finding that the sign had fluttered down and hit the plaintiff, the plaintiff initially informed Shaw twice that she was okay and it was later that the plaintiff's son sought Shaw's assistance for his mother. The trial court specifically noted that the plaintiff informed Shaw of a problem with her ear and did not mention any head or eye injuries. The trial court concluded that any alleged injuries to plaintiff's head and eye were not caused by the accident.
The trial court also found that the physicians' testimony and opinions were contradictory to Ms. Bradshaw's claims with regard to her injuries. The trial court gave an illustrative discussion of some of the contradictions, which we adopt in our review of this case. Contrary to the plaintiff's testimony, Dr. Spires only examined the plaintiff once in connection with the accident. Dr. Spires testified that on the day after the accident, the plaintiff had a normal exam and her CT scan did not show any specific physical findings. He did not recall any eye pain or soreness. Dr. Spires did not know that the plaintiff had seen an ophthalmologist. Again, on July 31, 2001, during a visit because of a foot problem, Dr. Spires did not note any eye or head problems. In January 2002, Dr. Spires was informed of plaintiff's dizziness, which he associated with an elevated *628 blood pressure and chronic problems connected to plaintiff's stroke and vascular disease. Contrary to the plaintiff's testimony, Dr. McDonald examined the CT scan and did not detect any head trauma or signs of a recent injury. Furthermore, Dr. Broussard saw the plaintiff a few months after the accident and not the month following the accident. Dr. Broussard was unable to relate Ms. Bradshaw's symptoms to the accident. He found that "the symptoms would require a pretty good blow or hit" and "not a flick," as both Shaw and Ms. Bradshaw had described in their testimony. Moreover, Dr. Broussard opined that the symptoms experienced by the plaintiff usually resulted from a problem with the immune system and not a blow to the eye.
After discussing the numerous contradictions and inconsistencies in Ms. Bradshaw's testimony, the trial court found that the plaintiff was mistaken as to the cause of her health problems, which were "more likely a result of her earlier stroke." It found that if her injuries were caused by the accident, at least one of her doctors would have noticed some physical symptoms. We agree with the trial court's finding that none of Ms. Bradshaw's doctors could connect her symptoms to the accident.
Consequently, we conclude that there exists a reasonable factual basis for the trial court's finding that Ms. Bradshaw's injuries were not caused by the accident and that she was not entitled to damages. Thus, the trial court was not clearly wrong in rejecting the plaintiff's claims, and dismissing her lawsuit.

CONCLUSION
For the foregoing reasons, the trial court's judgment in favor of Brookshire Grocery Company d/b/a Super One Store 603 and Roy Shaw is affirmed. Costs of this appeal are assessed to the plaintiff, Ethel Bradshaw.
AFFIRMED.
NOTES
[1] The defendant, Brookshire Grocery Company's correct name is Brookshire's Grocery Company. However, to maintain consistency with the case caption, we will refer to the defendant as Brookshire Grocery Company.
[2] Dr. Brenton McDonald, a radiologist, reviewed Ms. Bradshaw's CT scan films and concluded that there was no evidence of a recent injury or any head trauma.