Judgment rendered
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,211-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

COURTNEY JO TULLY                           Plaintiff-Appellee

versus

ALFREDO GRANILLO, HUDGINS            Defendants-Appellants
ROOFING COMPANY, AND
STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2019-1228

Honorable Robert C. Johnson, Judge

* * * * *

DAVENPORT, FILES, AND KELLY, LLP        Counsel for Appellants
By:  Carey B. Underwood

NELSON, ZENTNER, SARTOR, AND
SNELLINGS, LLC
By:  Thomas G. Zentner, Jr.

EDDIE CLARK AND ASSOCIATES, LLC        Counsel for Appellee
By:  Eddie M. Clark

* * * * *

Before PITMAN, STONE, STEPHENS, ROBINSON, and ELLENDER, JJ.

STONE, J., dissents with written reasons.

**ROBINSON, J.**

Plaintiff, Courtney Jo Tully ("Tully") sued Defendants, Alfredo Granillo ("Granillo"), Granillo's employer, Hudgins Roofing Company ("Hudgins"), and Hudgins' liability insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), (collectively, "Defendants"), on April 10, 2019, seeking damages for injuries suffered in an automobile collision on April 16, 2018, caused by the negligence of Granillo.

The parties entered into a joint stipulation and consent judgment on June 4, 2020, in which they stipulated that Granillo was an employee of Hudgins working in the course and scope of employment, Hudgins was insured by State Farm, and Defendants were 100% at fault. Prior to trial, Tully filed a motion for partial summary judgment on the issue of causation of injury, as well as motions in limine to exclude Tully's prior accidents and any evidence concerning force of impact. Judgments granting Tully's motion for partial summary judgment on causation and motion in limine regarding prior accidents were entered on February 26, 2021. A standing order granting the motion in limine regarding force of impact references and evidence was entered at the onset of trial, on March 16, 2022.

A jury verdict was rendered in Tully's favor on March 18, 2022, awarding past medical expenses of $95,286, future medical expenses of $1,300,000, and general damages of $1,000,000. A judgment confirming the verdict was entered on March 23, 2022. All post-trial motions were denied by the trial court. Defendants filed a motion for suspensive appeal on June 22, 2022, and an order granting the appeal was signed June 29, 2022.

For the following reasons, we REVERSE the trial court's judgment on Tully's motion for partial summary judgment on the issue of causation and its order granting Tully's motion in limine to exclude any reference to or evidence on Defendants' low impact theory. We VACATE AND REMAND the trial court's judgment confirming the jury's verdict on damages and grant a new trial.

## FACTS AND PROCEDURAL HISTORY

On April 16, 2018, Granillo, while in the course and scope of his employment for Hudgins, was involved in an automobile accident with Tully. Tully was driving her 2008 Chevrolet HHR SUV on a Monroe city street when Granillo backed out his work truck, a 2016 GMC Silverado truck, from the side of the road into Tully's lane of travel without warning, resulting in a collision with impact to the passenger side of Tully's vehicle. Defendants stipulated Granillo was 100% at fault. Both vehicles were drivable after the accident, and no injury was reported at the scene.

The day after the accident, Tully began experiencing pain in her low and middle back, right hip, and neck. She first contacted her attorney, who recommended the use of a chiropractor. Tully began chiropractic treatment with Dr. G.G. Grant two days after the accident. After little progress, Dr. Grant recommended a cervical MRI, which was taken on August 1, 2018, and showed a small bulge at the C5-6 vertebrae without stenosis and a small disc herniation at C6-7. Dr. Grant then referred Tully to Dr. John Ledbetter at Louisiana Pain Care.

Tully had her initial consultation with Dr. Ledbetter on August 20, 2018, for her neck and back pain. Dr. Ledbetter referred Tully to physical

therapy, which she attended at Melanie Massey Physical Therapy from September 11 through October 13, 2018. Tully returned to Dr. Ledbetter after physical therapy, still experiencing neck pain.

Medial branch blocks at the right side of C3-6 were performed on February 13, 2019, and the left side on February 20, 2019. Tully reported a 50% reduction in neck pain following the procedures, but pain increased shortly after. A cervical epidural steroid injection was performed on June 3, 2019. Tully again reported a reduction in pain of 50-60%, but had continued stiffness with neck rotation. Bilateral cervical medical branch nerve blocks were again performed on June 24, 2020. Tully reported significant relief but some continued pain, stiffness, and limited range of motion. Dr. Ledbetter then recommended Tully receive bilateral cervical medial branch rhizotomies (ablations). The right side ablation was performed on August 12, 2020, and the left side on September 16, 2020. The procedure significantly helped with pain, but it gradually returned. Dr. Ledbetter performed a second ablation on both sides of the neck in September 2021. Tully returned to Dr. Ledbetter for the last time on October 27, 2021, stating she was very pleased with the response she had to the procedures.

Dr. Harold Katz performed an independent medical examination ("IME") for Tully on July 20, 2020, for headaches, numbness on her right side, and decreased range of motion in her neck. Dr. Katz diagnosed pre-existing cervical spondylosis that was aggravated by the accident, along with a disc herniation at C6-7 with associated mild right C7 weakness, radicular symptoms, cervical headaches, and paresthesia in her right upper extremity. He noted that she was at an increased risk of requiring future neck surgery

and recommended that she be evaluated by a spine surgeon. He indicated she would likely benefit from a home exercise program, over-the-counter pain relievers as needed, and a muscle relaxer at bedtime, as well as regular physical therapy.

Dr. Marshall Cain performed an IME for Tully on behalf of Defendants in March 2021. Tully informed Dr. Cain that she was still doing well from the ablations and her herniated disc was not causing her any problems. Dr. Cain agreed that continued ablations were an appropriate pain relief recommendation, but he would not make any projections as to how long she may need them, noting the unpredictable nature of Tully's condition and that the procedures could provide relief for only a limited amount of time or as long as several years at a time or indefinitely. Dr. Cain's IME of Tully was taken as a result of Defendants' motion to compel the IME, which was heard on the same day as the motion for partial summary judgment. The motion to compel the IME was granted, but the record was not left open for the IME and depositions of the IME physician to be introduced as evidence.

Drs. Ledbetter and Katz both testified Tully will more likely than not need bilateral ablations repeated on average once per year indefinitely through her life expectancy, as well as pain management follow-up on an average of twice per year indefinitely through life, and routine physical therapy on an average of eight visits per year through her life. Dr. Grant testified that she will need chiropractic care for several years, though Tully had not had any physical therapy or chiropractic treatments since January 24, 2019, over three years prior to the trial.

At the time of the accident, Tully was a single mother to a 13-year-old son and 8-year-old daughter. She had been working at Super Discount Liquor for 12 years and was a part-time professional model. Her job at the store required heavy lifting and other physical activity. There is some dispute as to whether Tully had been working at the liquor store at the time of the accident and whether Tully's employment was terminated because she was no longer able to perform required tasks or for some other reason. Tully testified that she could also no longer model since it required standing poses for long periods of time and she could no longer participate in intensive gym workouts. She also testified as to her inability to participate in activities with her children as she had previously.

The parties stipulated that the Defendants were 100% at fault. However, Tully filed a motion for partial summary judgment on the issue of causation, as well as a motion in limine to exclude any evidence concerning force of impact. Tully attached to her motion for partial summary judgment, an affidavit from Dr. Ledbetter and accompanying medical records from Louisiana Pain Care, and medical records from Dr. Grant and Shell Chiropractic Clinic. The trial court granted the motion for partial summary judgment, holding that the accident caused the injuries to Tully. The court also granted the motion in limine to exclude photographs of the vehicles and any testimony concerning force of impact or the minor amount of damage caused by the collision.

During closing arguments, Defendants objected to Tully's "unit of time" reference in their closing argument that broke down the request for $1,000,000 in general damages for Tully's remaining life expectancy of 43

years to $2.64/hour. The objection was overruled. A jury verdict was ultimately rendered in favor of Tully on March 18, 2022, awarding past medical expenses of $95,286, future medical expenses of $1,300,000, and general damages of $1,000,000. A judgment confirming the verdict was entered on March 23, 2022. Post-trial motions were filed by both parties but denied by the trial court. Defendants filed a motion for suspensive appeal on June 22, 2022, and an order granting the appeal was signed June 29, 2022.

## DISCUSSION

### *Motion for Partial Summary Judgment*

Defendants argue that the trial court erred in granting Tully's motion for partial summary judgment on the issue of causation because a causation determination necessarily invokes a credibility assessment of the plaintiff, which is not appropriate on summary judgment. Defendants note that Tully's motion was supported by the affidavit of Dr. Ledbetter, who concluded that Tully's injuries were more likely than not related to the accident "after taking into account the history given by Ms. Courtney Tully." They urge that the jury should have been allowed to determine Tully's credibility as she testified, as well as the credibility of Granillo and the police officer, and to examine photographs of the minor damage to the vehicles involved in the accident.

Tully agrees with Defendants that, in many cases, a causation determination requires assessing a plaintiff's credibility, but it is only those cases in which there is evidence that the plaintiff has provided physicians with an inaccurate or incomplete history, leading to a possibly different

6

conclusion on medical causation, and there is no evidence of that possibility in this case.

Appellate courts review summary judgments *de novo*, using the same criteria that govern a trial court's consideration of whether summary judgment is appropriate. *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181 (La. 2/29/00), 755 So. 2d 226; *Murphy v. Savannah*, 18-0991 (La. 5/8/19), 282 So. 3d 1034; *Schroeder v. Board of Sup'rs of Louisiana State University*, 591 So. 2d 342 (La. 1991; *Dumas v. Angus Chemical Co.*, 31,969 (La. App. 2 Cir. 8/20/99), 742 So. 2d 655. An appellate court must reverse the granting of a motion for summary judgment unless it finds that the movant proved both of the necessary elements for summary judgment: (1) that no genuine issues of material fact exist, and (2) that movant is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3); *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So. 2d 191. These are the same questions asked by the trial court in determining whether summary judgment is appropriate. *Id*. Although summary judgments are now favored in Louisiana, a movant must still follow the proper procedure and prove entitlement to summary judgment before it is granted. La. C.C.P. art. 966(A)(2); *Independent Fire*, *supra*. A motion for summary judgment is not to be substituted for a trial on the merits. *Grisby v. Jaasim II, LLC*, 54,646 (La. App. 2 Cir. 9/21/22), 349 So. 3d 103, *writ denied*, 22-01573 (La. 12/20/22), 352 So. 3d 87; *S.J. v. Lafayette Parish School Board*, 06-2862 (La. 6/29/07), 959 So. 2d 884; *Faul v. Bank of Sunset & Trust Co.*, 93-1080 (La. App. 3 Cir. 4/6/94), 635 So. 2d 573, *writ denied*, 94-1627 (La. 9/30/94), 642 So. 2d 879. This Court has held that summary judgment is appropriate

only when all the relevant facts are marshalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts. *Robertson v. State ex rel. Dept. of Planning & Control*, 32,309 (La. App. 2 Cir. 12/10/99), 747 So. 2d 1276, *writ denied*, 00-0041 (La. 2/25/00), 755 So. 2d 882. Once an unresolved genuine factual issue is detected, summary judgment cannot be granted. *Layne v. City of Mandeville*, 633 So. 2d 608 (La. App. 1 Cir. 1993), *writ denied*, 94-0268 (La. 3/25/94), 635 So. 2d 234.

In a motion for summary judgment, the burden of proof rests with the movant. La. C.C.P. art. 966(D)(1). The burden shifts to the nonmoving party only after the movant has properly supported the motion and carried his initial burden of proof. *Tanner v. Reynolds Metals Co.*, 98-1456 (La. App. 1 Cir. 1999), 739 So. 2d 893. The trial court may not properly place the initial burden of proving that the moving party is not entitled to a motion for summary judgment on the party opposing the motion. *Transworld Drilling Co. v. Texas General Resources, Inc.*, 604 So. 2d 586 (La. App. 4 Cir. 1992), *writ denied*, 608 So. 2d 174 (La. 1992). Thus, if the moving party fails to carry the burden of proving no genuine issues of material fact exist, the opposing party may rest on the mere allegations or denials contained in his or her pleadings. *Downtown Parking Service, Inc. v. Hyman*, 93-1803 (La. App. 4 Cir. 1994), 635 So. 2d 282, *writ denied*, 94-1519 (La. 9/23/94), 642 So. 2d 1298. If the evidence submitted by the party moving for summary judgment is insufficient from either an evidentiary or substantive legal standpoint to prove that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law, the motion for

8

summary judgment must be denied; the burden never shifts to the opposing party. *Hopkins v. Sovereign Fire & Cas. Ins. Co.*, 626 So. 2d 880 (La. App. 3 Cir. 1993), *writ denied*, 634 So. 2d 390 (La. 1994). In fact, in *Crockerham v. Louisiana Medical Mutual Ins. Co.*, 17-1590 (La. App. 1 Cir. 6/21/18), 255 So. 3d 604, the First Circuit found that the failure to file an opposition to a motion for summary judgment did not automatically require the granting of the motion because the movant's supporting documents were insufficient to resolve all material fact issues; therefore, summary judgment must be denied in favor of a trial on the merits even though the nonmoving party did not file an opposition to the motion. The opposing party's failure to file evidence opposing the motion for summary judgment does not mean that the moving party is automatically entitled to summary judgment. *Caballero Planting Co., Inc. v. Hymel*, 597 So. 2d 35 (La. App. 1 Cir. 1992), *writ denied*, 98-2035 (La. 11/6/98), 728 So. 2d 391.

Here, Tully is the movant on the motion for partial summary judgment and, as the plaintiff, would normally bear the burden of proving causation at trial. In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident which caused the injury. *Maranto v. Goodyear Tire & Rubber Co.*, 94-2603 (La. 2/20/95), 650 So. 2d 757; *Bradshaw v. Brookshire Grocery Co.*, 38,960 (La. App. 2 Cir. 10/27/04), 886 So. 2d 623. The test for determining the causal relationship is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. *Maranto*, *supra*. To assist with this burden, a plaintiff may be entitled to a *presumption* that the injury was caused by the accident, which

9

would then shift the burden of proof to a defendant to prove that there is *no* causation.

Under *Housley v. Cerise*, 579 So. 2d 973 (La. 1991), *writ denied*, 600 So. 2d 646 (La. 1992), the Louisiana Supreme Court clarified that a personal injury plaintiff is entitled to a presumption that his disability or injury resulted from the subject accident if essentially he was in good health before the accident and symptoms of injury did not commence until following the accident. *Gober v. Walgreen Louisiana Co.*, 46,730 (La. App. 2 Cir. 11/2/11), 80 So. 3d 9, *writ denied*, 11-2837 (La. 3/2/12), 84 So. 3d 531; *Bruce v. State Farm Ins. Co.*, 37,704 (La. App. 2 Cir. 10/29/03), 859 So. 2d 296; *Lamb v. Berry*, 35,347 (La. App. 2 Cir. 12/2/01), 803 So. 2d 1024. In order for a plaintiff to benefit from the *Housley* presumption of causation, three elements have to be proven *by the plaintiff* by a preponderance of the evidence: (1) the plaintiff was in good health prior to the accident (or there were no symptoms from a pre-existing condition); (2) subsequent to the accident, the symptoms of the alleged injury appeared and continuously manifested themselves afterwards; and (3) there is a reasonable *possibility* of causation between the accident and the claimed injury (demonstrated by medical, circumstantial, or common knowledge evidence). *Edwards v. LCR-M Corp., Inc.*, 41,125 (La. App. 2 Cir. 7/12/06), 936 So. 2d 233; *Peters v. Williams*, 40,403 (La. App. 2 Cir. 12/14/05), 917 So. 2d 702; *Juneau v. Strawmyer*, 94-0903 (La. App. 4 Cir. 12/15/94), 647 So. 2d 1294; *Kelly v. AME Janitorial Services Co.*, 09-1167 (La. App. 4 Cir. 3/3/10), 33 So. 3d 358; *Gober*, *supra*; *Bruce*, *supra*.

Tully attached Dr. Ledbetter's affidavit and medical records from Louisiana Pain Care, as well as the medical records from Dr. Grant and Shell Chiropractic Clinic, to her motion for partial summary judgment on the issue of causation. Defendants waived any objections to admissibility of the evidence by failing to file an opposing affidavit or otherwise objecting to the evidence, so the trial court was required to consider the evidence. Unless a document has been excluded pursuant to an objection, the trial court is statutorily obligated to consider the contents, regardless of how conclusory the statements made therein may be. *Thompson v. Center for Pediatric and Adolescent Medicine, L.L.C.*, 17-1088 (La. App. 1 Cir. 3/15/18), 244 So. 3d 441, *writ denied*, 18-0583 (La. 6/1/18), 243 So. 3d 1062; *Aziz v. Burnell*, 21-187 (La. App. 3 Cir. 11/3/21), 329 So. 3d 963, *writ denied*, 21-01790 (La. 2/15/22), 332 So. 3d 1177. However, "merely stapling documents" to a motion for summary judgment does not transform them into competent summary judgment evidence. *Randazzo v. St. Bernard Parish Gov't*, 16-0902 (La. App. 4 Cir. 5/30/17), 219 So. 3d 1128, *writ denied*, 17-1209 (La. 10/27/17), 228 So. 3d 1236. The Louisiana Supreme Court in *Murphy, supra*, held that affidavits devoid of specific facts and based on conclusory allegations are not sufficient to defeat summary judgment. An affidavit must be made on "personal knowledge" and encompass only those facts that the affiant saw, heard, or perceived with his senses. *Roach v. Moffatt*, 55,415 (La. App. 2 Cir. 1/10/24), 379 So. 3d 268; *Dominio v. Folger Coffee Co.*, 05-0357 (La. App. 4 Cir. 2/15/06), 926 So. 2d 16, *writ denied*, 10-0570 (La. 5/21/10), 36 So. 3d 232.

An affidavit from a medical expert is admissible on the hearing of a motion for summary judgment, despite the fact it is based on hearsay information rather than the expert's personal knowledge. *Thierry v. State Through Dept. of Health & Hosp. & Univ. Med. Ctr. of Lafayette*, 06-1133 (La. App. 3 Cir. 2/7/07), 948 So. 2d 1200. The use of hearsay history of a case as told to a physician by a patient is admissible to show the basis of a physician's diagnosis and treatment. *Boudreaux v. Mid-Continent Cas.*, 09-1379 (La. App. 1 Cir. 5/7/10), 2010 WL 1838560; *Dardeau v. Ardoin*, 97-144 (La. App. 3 Cir. 11/5/97), 703 So. 2d 695, *writ denied*, 98-0359 (La. 3/27/98), 716 So. 2d 889. However, a court may not consider ultimate or conclusive facts and conclusions of law contained in supporting or opposing affidavits in deciding a motion for summary judgment. *Dumas*, *supra*; *Honeycutt v. International Paper Co.*, 421 So. 2d 1161 (La. App. 2 Cir. 1982).

Although Dr. Ledbetter's affidavit and the medical records were ultimately admitted as evidence on Tully's motion for partial summary judgment on causation, the trial court must still abide by certain important principles. First, the trial judge cannot make credibility determinations on a motion for summary judgment. *Sportsman Store of Lake Charles, Inc. v. Sonitrol Security Systems of Calcasieu, Inc.*, 99-0201 (La. 10/19/99), 748 So. 2d 417. Second, any inferences drawn by the trial court from undisputed facts should be in favor of the party opposing the motion. *Independent Fire*, *supra*. Most importantly, because summary judgments deprive the litigants of the opportunity to present their evidence to a jury, they should be granted

12

only when the evidence presented at the motion for summary judgment establishes that there is no genuine issue of material fact in dispute. *Id.*

Dr. Ledbetter's affidavit stated that he is treating Tully for neck pain "as a result of the injuries sustained in the April 16, 2018, collision" and that he took into account "history given by [Tully]." The affidavit and records indicate that, subsequent to the accident, Tully's symptoms appeared and continuously manifested themselves afterwards. They also support a "reasonable possibility" of causation because Dr. Ledbetter attested to treating Tully for injuries he believed were caused by the accident. However, Dr. Ledbetter does not indicate in his affidavit that Tully had no symptoms prior to the accident, other than references to what Tully communicated to him. Tully was not a patient of Dr. Ledbetter until after the accident, and there was nothing in the affidavit or accompanying records to show that Dr. Ledbetter had any connection to Tully whatsoever prior to the accident. Dr. Ledbetter could only have obtained knowledge regarding Tully's condition pre-accident from Tully providing that information. Tully did not prove the first element of the *Housley* presumption on her motion for partial summary judgment on the issue of causation – that she was in good health prior to the accident (or had no symptoms from a pre-existing condition); therefore, she was not entitled to any presumption of causation at that procedural juncture.

Because Tully is not entitled to the *Housley* presumption, as the plaintiff movant on the motion for partial summary judgment on the issue of causation with the burden of proof at trial, she must prove that no genuine issue of material fact exists as to the accident being the cause of the injury.

Tully must carry the initial burden of proof *before* the burden shifts to the nonmovant Defendants to submit evidence that there *is* a genuine issue of material fact. Tully's evidence did not prove that she was in good health pre-accident, which, in and of itself, creates a genuine issue of material fact as to whether the accident caused her injury. She did not provide affidavits or records from any other physician or healthcare facility, her own affidavit, or any other circumstantial or common knowledge evidence. The evidence not only failed to prove Tully was in good health prior to the accident, but it was insufficient to show that no genuine issue of material fact existed as to whether the accident caused the injury because not all relevant facts were marshalled before the court.

A jury may accept or reject a medical expert's opinion after weighing and evaluating medical testimony. *Merrells v. State Farm Mut. Auto. Ins. Co.*, 33,404 (La. App. 2 Cir. 6/21/00), 764 So. 2d 1182; *McInnis v. Bonton*, 17-0088 (La. App. 1 Cir. 9/21/17), 232 So. 3d 22. The jury is not bound to accept a plaintiff's perception, or any other witness' perception, of the nature and extent of his injuries. *Stevenson v. Serth*, 14-846 (La. App. 5 Cir. 3/25/15), 169 So. 3d 612; *McInnis*, *supra*. The jury can choose to reject all of the testimony of any witness or may believe and accept any part of a witness' testimony and reject any other part. *Stevenson*, *supra*; *McInnis*, *supra*; *Jones v. Bravata*, 18-0837 (La. App. 1 Cir. 7/24/19), 280 So. 3d 226, *writ denied*, 19-01850 (La. 2/26/20), 294 So. 3d 477. Further, force of impact is a valid criterion in determining causation and extent of injuries. *Merrells*, *supra*. It is proper for a trier of fact to consider the minimal nature of a motor vehicle accident to determine whether injuries have been

suffered, including allowing photographs of vehicles to be introduced so that a jury can fully consider the facts of the case is it relates to credibility and causation. *Boudreaux, supra.* In *Brown v. Trask*, 08-0006 (La. App. 4 Cir. 10/15/08), 998 So. 2d 131, *writ denied*, 08-2707 (La. 1/30/09), 999 So. 2d 757, the trial court allowed a jury to view photographs that showed no damage to the front of a defendant's car, and the appellate court concluded that the jury could have reasonably found that such a minor accident could not have caused the debilitating injuries alleged by the plaintiff. In *Rachal v. Gilchrist*, 08-342 (La. App. 3 Cir. 10/1/08), 995 So. 2d 1226, *writ denied*, 08-2612 (La. 1/9/09), 998 So. 2d 725, the trial court allowed a jury to be presented photographs of minor damage to a vehicle's mirror and the jury found insufficient evidence of the alleged injuries.

The trial court noted that it was unable to find a material issue of fact on causation because Defendants had not filed any exhibits to rebut Tully's motion for partial summary judgment. Because Tully never carried her initial burden and failed to show that there was no genuine issue of material fact as to causation, the burden of proof never shifted to Defendants. Defendants' failure to present any evidence was inconsequential. Therefore, the trial court erred in granting Tully's motion for partial summary judgment on this basis.

A trial court should not grant a motion for summary judgment if doing so requires it either to weigh evidence or to make credibility evaluations. *Rivault v. America Homeland, LLC*, 21-00708 (La. 10/12/21), 325 So. 3d 1051; *Faul, supra*. Credibility determinations and the weighing of conflicting factual evidence has no place in deciding a motion for summary

15

judgment.  *Brooks v. Minnieweather*, 44,624 (La. App. 2 Cir. 8/19/09), 16 So. 3d 1244; *Gladney v. Milam*, 39,982 (La. App. 2 Cir. 9/21/05), 911 So. 2d 366.  In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter but, instead, to determine whether there is a genuine issue of triable fact. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764.

During the hearing on the motion for partial summary judgment, Defendants urged that the record on the motion should be kept open to allow for the future testimony of Granillo, other physicians, the investigating officer, and lay witnesses.  In response, the trial judge stated:

> [Future depositions from Granillo] would do very little to answer the medical question of whether or not the accident itself caused the injury.  And so, taking his deposition is not going to aid the Court in determining the question of the causal connection between the accident and the alleged resulting injuries of the neck and back pain that were allegedly suffered by Ms. Tully.  It appears to me that can only be determined by medical experts and the defendant driver is not a medical expert, so his testimony regarding the facts of the case and how the accident happened would shed no light in the Court's view on the question that is before the Court today in this motion for partial summary judgment on the question of a causal connection between the accident and the medical – the resulting medical injuries of neck and back pain to Ms. Tully.

There was also discussion regarding the specific context in which Dr. Cain would provide his testimony, whether regarding causation or damage amounts.  The trial court found that Defendants did not engage Dr. Cain for the purpose of making any causal connection but only for future medicals. The law does provide that causation in a personal injury action shall be proven through medical testimony; however, the trial court mistakenly interpreted this concept to mean that medical testimony is the *only* evidence required or permissible to prove causation.  Other evidence can *and should*

16

be presented to a jury to make the causal connection. The trial court's granting of Tully's motion for partial summary judgment on this basis was also error.

In addition, the trial court improperly weighed evidence and made credibility determinations. In particular, it made the determination that Granillo's testimony "would do very little to answer the medical question of whether or not the accident itself caused the injury," essentially weighing evidence that had yet to be presented. It also made an improper credibility determination when it relied on the hearsay evidence in the medical records regarding Tully's condition and symptoms rather than allowing Tully to testify and having the jury make that determination. Therefore, the trial court erred in granting Tully's motion for partial summary judgment on these bases as well.

The trial court erred in granting Tully's motion for partial summary judgment on the issue of causation due to its misapplication of the proper burden of proof, a mistake in law regarding medical testimony, and the improper weighing of evidence and credibility determinations. As a result, this Court reverses the trial court's granting of the motion for partial summary judgment as well as its judgment at trial regarding damages, and finds that a new trial is warranted consistent with this opinion.

### *Motion in Limine*

Tully's motion in limine to exclude any evidence concerning force of impact was filed following the granting of her motion for partial summary judgment on the issue of causation, and it is clear that the motion in limine was granted as a direct result of the granting of the motion for partial

summary judgment. Had partial summary judgment been denied, Defendants should have had the opportunity to introduce evidence of the low-impact crash in support of their argument that the accident was not the cause of Tully's injuries or the full extent thereof, or at minimum, to present to the jury for consideration when awarding proper damage amounts. Therefore, as a result of this Court's reversal of the motion for partial summary judgment, the motion in limine regarding force of impact evidence is also reversed.

## *Excessive Damages*

Defendants argue that Tully's awards of $1,300,000 for future medical expenses and $1,000,000 for general damages are excessive because Tully's future medical treatments are speculative and general damages in prior jurisprudence for plaintiffs with treatment for life are well below Tully's awarded amount. They also argue that the trial court erred in overruling its objections to Tully's "unit of time" reference in her closing argument that broke down the request for $1,000,000 in general damages for Tully's remaining life expectancy of 43 years to $2.64/hour, which is improper. Tully claims the awards are well supported by evidence and that the record lacked evidence to support lower amounts, and that the "unit of time" argument was permissible.

This Court declines to discuss the particulars of Tully's damage amounts because a new trial is warranted as a result of this Court's reversals of the trial court's judgment on Tully's motion for partial summary judgment on the issue of causation and ruling on Tully's emergency motion in limine to exclude any reference to "low impact wreck," and resulting

18

reversal of the trial court's judgment at trial. However, this Court will note the Louisiana Supreme Court's recently rendered opinion in *Pete v. Boland*, 23-00170 (La. 10/20/23), in which it stated that, "We now hold that an appellate court must consider relevant prior general damage awards as guidance in determining whether a trier of fact's award is an abuse of discretion."

## CONCLUSION

For the foregoing reasons, we REVERSE the trial court's judgment on Tully's motion for partial summary judgment on the issue of causation and its ruling and order granting Tully's motion in limine to exclude any reference to or evidence on Defendants' low impact theory. As a result, we VACATE AND REMAND the trial court's judgment confirming the jury's verdict on damages. All costs of this proceeding are to be split 50% to Plaintiff, 50% to Defendants.

**REVERSED; VACATED AND REMANDED.**

**STONE, J., dissenting with written reasons.**

I respectfully dissent from the majority opinion. This court should affirm the trial court's judgment granting plaintiff's partial motion for summary judgment.

This case involves a defense strategy that went awry and the defense's failure to correct it. The defense's argument is premised on the fact that Dr. Ledbetter's affidavit states expressly that he relied on the medical and case history that the plaintiff provided him in forming the basis of his opinion on causation of injury. The defense claims that, in finding this affidavit constitutes prima facie proof of causation of injury, the trial court impermissibly made a credibility determination on summary judgment – i.e., determined the plaintiff's history given to Dr. Ledbetter to be truthful. This argument misunderstands summary judgment procedure. Aside from exceptions not relevant here, summary judgment affiants and witnesses are *deemed* credible. That presumption of credibility remains in force unless *and* until contradictory summary judgment evidence is introduced; in that case, grounds for the existence of a genuine issue of material fact has been established. Thus, it is incumbent on the defendants to introduce summary judgment evidence contradicting the plaintiff's narrative on which Dr. Ledbetter relied; otherwise, plaintiff's narrative is deemed to be truthful for purposes of summary judgment.

The defense did not introduce any summary judgment evidence or object to the admission of any of the evidence that the plaintiff filed in support of the motion for summary judgment ("MSJ"). Also, the defense failed to show how plaintiff's affidavit and supporting evidence was

1

insufficient. Therefore, the court was statutorily obligated to consider all of that evidence, which reflected the opinion of a medical expert that the accident caused Tully's symptoms.

La. C.C.P. art. 967(A) states:

> A. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The supporting and opposing affidavits of experts may set forth such experts' opinions on the facts as would be admissible in evidence under Louisiana Code of Evidence Article 702, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court *may* permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.

The trial court did not err in granting the partial motion for summary judgment and did not misinterpret the law as the majority suggests.

The MSJ was essentially unopposed. La. C.E. art. 703 allows expert witnesses to rely on hearsay or other inadmissible evidence, including in a summary judgment affidavit. *Barber v. Louisiana Mun. Risk Mgmt. Agency Grp. Self-Insured Fund*, 17-1005 (La. App. 3 Cir. 4/18/18), 244 So. 3d 56, 61. In particular, La. C.E. art 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject, *the facts or data need not be admissible in evidence.* (Emphasis added).

Thus, in the matter *sub judice*, Dr. Ledbetter's reliance on Tully's statement that she did not have symptoms prior to the accident was totally

2

compliant with the standards set forth in La. C.C.P. art. 967(A), and his opinion that the accident caused Tully's symptoms is prima facie evidence of medical causation. That reality shifts the burden to the defense, and renders applicable La. C.C.P. art. 967(B):

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

As previously stated, the defense failed to oppose the MSJ. If there was outstanding discovery the defense needed to oppose the MSJ, the defense was required under La. C.C.P. art. 967(B) to so state in an affidavit compliant with La. C.C.P. art. 967(A) and filed with or referenced in the opposition memorandum. The onus is not on the trial court, and protestations of inadequate opportunity for discovery not made in that form are not legally cognizable and are utterly devoid of effect. The trial court did not err in granting the MSJ.